477 F.2d 1
 5 Fair Empl.Prac.Cas. 908, 5 Empl. Prac. Dec. P 8557
Dr. Ina BRADEN, on behalf of herself and all others
similarly situated, Appellant,
v.
The UNIVERSITY OF PITTSBURGH and Wesley W. Posvar.
 No. 72-1220.
 United States Court of Appeals,
Third Circuit.
 Argued Feb. 5, 1973.
Decided April 11, 1973.
 
 David Berger, Philadelphia, Pa., Harold Gondelman, Baskin, Boreman, Wilner, Sacks, Gondelman & Craig, Pittsburgh, Pa., Sylvia Roberts, Baton Rouge, La., for appellant.
 James M. Arensberg, Charles C. Arensberg, Tucker Arensberg & Ferguson, Pittsburgh, Pa., Ketchum & Ketchum, Burlingame, Cal., for appellees.
 Myra Anderson Ketchum, Burlingame, Cal., for amicus curiae.
 Before BIGGS and GIBBONS, Circuit Judges, and HUYETT, District Judge.
 OPINION OF THE COURT
 BIGGS, Circuit Judge.
 
 
 1
 The original complaint and the amended complaint allege that the plaintiff, Dr. Ina Braden, a woman, is employed by the corporate defendant, University of Pittsburgh, as an assistant professor in the Learning Resources Division of the University's Dental School; that the individual defendant, Dr. Wesley W. Posvar, is the Chancellor of the University; that Dr. Braden has brought this action on her own behalf and on behalf of all women currently or previously employed by the University "in professional positions" from January 1968 to the time of the filing of the suit. Without referring to allegations relating to class suits, Rule 23 Fed.R. Civ.Proc., the complaint, Count I, alleges in substance that the defendants have enacted and effected policies and practices of unlawful and systematic exclusion of and discrimination against women by hiring them at lower rank and lesser pay than similarly-trained and qualified men, failing to promote women as they promote men, failing to grant tenure as is granted to men, failing to equalize conditions of employment, substantially excluding women from graduate faculty and administrative positions having policy-making functions, harassing, threatening and employing other punitive measures, including the discharge of women, including the plaintiff, and failing to reappoint women, including the plaintiff, who have been engaged in attempts to bring facts concerning inequities in the employment of women to the attention of the Chancellor and other officials.[1] Dr. Braden alleges that she has been employed as an assistant professor in the Dental Behavior Science Department from September 1968 to the present and that she has been actively engaged in the dissemination of information regarding the unequal employment status of women at the University of Pittsburgh and has been chairman of the University Committee for Women's Rights. Count II incorporates paragraphs 1 and 3 through 14 of Count I, and is based primarily on 42 U.S.C. Sec. 1983. Count III alleges the defendant University is a contractor or subcontractor as provided in Executive Order 11246 as amended by Executive Order 11375, pertaining to discrimination on the basis of sex by government contractors and subcontractors, and again alleges discrimination and the absence of a day care center for minor children of female employees. Dr. Braden nowhere alleges that she has a child to be cared for in a day care center. Count IV alleges discrimination in violation of the Pennsylvania Equal Pay Act, 43 P.S. Sec. 336.1 et seq.
 
 
 2
 The original complaint, filed July 9, 1971, in respect to jurisdiction, states: "1. This Court has jurisdiction of this action under the Act of September 3, 1954, c. 1263, Section 42, 68 Stat. 1241, as amended, 28 U.S.C. Section 1343. 2. This action is brought and these proceedings are instituted under R.S. Section 1979, 42 U.S.C. Section 1983."; and "13. Defendant, by the acts, practices and conduct alleged herein, has, under color of law, subjected and caused to be subjected plaintiff and the members of the class to the deprivation of rights, privileges, and immunities secured by the Constitution and the laws of the United States in violation of R.S. Section 1979, 42 U.S.C. Section 1983. Defendant has violated rights guaranteed to plaintiff and the members of the class under, inter alia, the following provisions of law: (a) the First and Fourteenth Amendments of the Constitution of the United States; . . ." (Emphasis added.)
 
 
 3
 On December 16, 1971 the plaintiff was permitted to amend her complaint. In her motion she states that she brought action under 42 U.S.C. Sec. 1983, but that she desires to state a cause of action arising under 42 U.S.C. Sec. 1981, and also desired to add an additional party defendant, viz., Wesley W. Posvar, the Chancellor of the University of Pittsburgh. Leave was granted, and the amended complaint was filed also as a class action. No clean copy of the complaints were filed and it is difficult to summarize their substance, but it is clear that there is reliance in the amended complaint, as in the original complaint, on the First and Fourteenth Amendments of the Constitution and upon alleged violations of Secs. 1981 and 1983.
 
 
 4
 The complaints conclude with prayers that the defendants establish non-discriminatory hiring, payment, opportunity, and promotional plans and programs, and seek to enjoin the defendants from continuing the alleged illegal acts and practices alleged in the complaints and to require the payment of damages with interest, costs of suit and a reasonable attorney's fee.[2]
 
 
 5
 The defendants filed an answer denying all major relevant allegations. The last paragraph of the answer consists of a motion to dismiss. The district judge filed a memorandum of law[3] and held in substance that the action could not be maintained under 42 U.S.C. Sec. 1981 because Sec. 1981 applied only to Negroes and that the Commonwealth did not have sufficient connection with the University to be able to maintain the action under Sec. 1983.[4] ,[5] The last issue tendered is, we believe, governed by Burton v. Wilmington Parking Authority, 365 U.S. 715, 725, 81 S.Ct. 856, 862, 6 L.Ed.2d 45 (1961), and it must be decided whether the Commonwealth, in the language of Mr. Justice Clark, "has so far insinuated itself into a position of interdependence" with the University that it must be recognized as a joint participant in the challenged activity, i. e., discriminating against women. Stated conversely, can the activities of the University be considered to be so purely private as to fall outside the scope of the Fourteenth Amendment.[6]
 
 
 6
 It would perhaps be possible for us to decide this last issue on the present record but we think we should not do so. Very important constitutional questions are presented and the Supreme Court has repeatedly informed us that such difficult issues should not be decided except upon a full record and after adequate hearing. Polk Co. v. Glover, 305 U.S. 5, 59 S.Ct. 15, 83 L.Ed. 6 (1938); Bordens Farm Products v. Baldwin, 293 U.S. 194, 55 S.Ct. 187, 79 L.Ed. 281, concurring opinion, 293 U.S. 213, 55 S.Ct. 193, 79 L.Ed. 290 (1934); Villa v. Van Schaick, 299 U.S. 152, 57 S.Ct. 128, 81 L.Ed. 91 (1936). See also Honeyman v. Hanan, 300 U.S. 14, 25, 57 S.Ct. 350, 81 L.Ed. 476 (1937); Patterson v. Alabama, 294 U.S. 600, 607, 55 S. Ct. 575, 79 L.Ed. 1082 (1935); Rescue Army v. Municipal Court, 331 U.S. 549, 67 S.Ct. 1409, 91 L.Ed. 1666 (1947); DeBacker v. Brainard, 396 U.S. 28, 90 S.Ct. 163, 24 L.Ed.2d 148 (1969), and Cowgill v. California, 396 U.S. 371, 90 S.Ct. 613, 24 L.Ed.2d 590 (1970).
 
 
 7
 In the view that we take of this case we deem it undesirable to pass upon the issues presented by Sec. 1981 and Executive Order 11246 as amended by Executive Order 11375 at this time since we will vacate and remand the judgment for further consideration and a more ample record, as suggested hereinafter. To decide now the applications of Sec. 1981 and the Executive Order but not the application of Sec. 1983 would be to truncate the case, and if an order were entered sustaining or rejecting the position of the district court in respect to these issues, it would not be appealable to the Supreme Court for it would not be a final judgment and major issues would be left unanswered as well as the issue of possible pendent jurisdiction.
 
 
 8
 The deficiencies in the record are notable. For example, 24 P.S. Sec. 2510-204(a) and (b) provide that the Trustees of the University of Pittsburgh shall consist of 36 members, (a) "one of whom shall be the Chancellor of the University . . . and the Governor of the State, the Superintendent of the Department of Public Instruction, and the Mayor of the City of Pittsburgh," and (b) that 12 of the trustees shall be designated Commonwealth Trustees, and 4 shall be appointed by the Governor, 4 by the President Pro Tempore of the Senate and 4 by the Speaker of the House (with the advice and consent of the Senate). The law provides, therefore (if this interpretation be correct, though we are in doubt concerning it), that, omitting the Chancellor of the University but including the Mayor of the City of Pittsburgh, 3 of the trustees appointed in addition to the 12 Commonwealth trustees are agents of government. It follows, therefore, that if the provisions of the statute have been carried out, at least 15 of the trustees are in fact government connected.
 
 
 9
 Subsection (a) provides for 36 members of the Board of Trustees, but all those members specified in subsections (a), (b), and (c) total 40. We find this statute exceedingly ambiguous, and since it has been in effect since 1966, we should have the advantage of knowing how it has been construed, how many trustees there really are, and how they are selected.
 
 
 10
 We cannot decide this case in a semivacuum. We do not know, for example, the number of trustees which the University actually has, their names, their tenure of office, and who and what they are, their occupations and connections, and whether or not they are paid for their services or meetings or receive salaries or emoluments, and if so, by whom are these emoluments or salaries paid and what do they amount to. Non constat that the 20 or 24 trustees to be elected pursuant to 24 P.S. Sec. 2510-204(c) have actually been selected or are in office, or that the 15 government-connected trustees were in fact serving or were in office at the times complained of by the plaintiff. Neither are we informed as to the by-laws according to which the 20 or 24 "public" trustees were selected or indeed as to any bylaws of the board of trustees. We are not informed as to what constitutes a quorum of the trustees. We do not even know how the Chancellor is selected.[7]
 
 
 11
 The sums of money contributed by the Commonwealth to the University are not in evidence. In this connection, we have before us an appellant's "appendix"[8] which attempts to use statements in a brief as record evidence and treats these statements as admissions. Our reference is to the inclusion in this appendix of a portion of the defendants' brief which states at p. 17: "In the University's fiscal year 1965-66 9.3% came from the State; in 1966-67 25.8%; in 1968-69 32.1%; in 1969-70 34.5%" We have repeatedly stated that statements in briefs unless specifically admitted by the adversary side cannot be treated as record evidence. United States v. Bowles, 331 F.2d 742, n. 11 at 746 (1964); Williams v. Murdoch, 350 F.2d 840 (1965). We do not know how much of the Commonwealth grants were expended for particular purposes and what those purposes were or how much went into the general fund of the University. We have no knowledge of the voting record of the trustees on any issues or the attitude of individual members of the board as shown by their voting. We do not have any of the resolutions of the board before us or any statement by any member of the board, including the Chancellor, as to what is the attitude of the University respecting the employment of women as teachers or professors.
 
 
 12
 There are other items upon which the record should be able to enlighten us which are not included in the district court opinion. The distinction between public and private educational corporations is a very old one, see Trustees of Dartmouth College v. Woodward, 17 U.S. (4 Wheat.) 518, 4 L.Ed. 629 (1819), and the balance can be a delicate one. One cannot overlook Mr. Justice Clark's statement in Burton, supra, at 722, 81 S.Ct. at 860: "Only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance." (emphasis added). Compare Cooper v. Aaron, 358 U.S. 1, 4, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958). We do not have enough facts before us to determine the extent of the involvement of the Commonwealth in the conduct of the University, so that such conduct can be given its true significance. The issue, as Mr. Justice Clark said and as we have stated, is whether the Commonwealth has "insinuated itself" into the affairs of the University in such a way that the University's "conduct cannot be considered to be so 'purely private' as to fall without the scope of the Fourteenth Amendment." The balance here is a delicate one. The district court dismissed the complaint, and since matter outside the pleadings was presented and not excluded by the court, "[T]he [district] court was therefore required by Rule 12(b) of the Federal Rules of Civil Procedure to treat the motion to dismiss as one for summary judgment and to dispose of it as provided in Rule 56. Under Rule 56, summary judgment cannot be granted unless there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Carter v. Stanton, 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972). See also United States ex rel. Jones v. Rundle, 453 F.2d 147, 150 (3 Cir. 1971).
 
 
 13
 It is notable that 24 P.S. Sec. 2510-202(6), states: "[I]t is hereby declared to be the purpose of this act to extend Commonwealth opportunities for higher education by establishing [the] University of Pittsburgh as an instrumentality of the Commonwealth to serve as a State-related institution in the Commonwealth system of higher education."[9] The use of the word "instrumentality" suggests agency. See, Webster's New International Dictionary of the English Language, 2d ed., and "Agency" and "Instrumentality," Words & Phrases, Permanent ed. (1955 and 1960). There was no discussion contained in the opinion of the district judge respecting this unusual provision nor was it discussed by counsel. We have found nothing similar to it in any of the cases cited to us. Upon analogy to government boards and agencies the views of the trustees respecting this unusual provision, i. e., how they interpret it-might be of great value in resolving the difficult issue presented. As was said by Judge Friendly in Powe v. Miles, 407 F.2d 73, 83 (2 Cir. 1968), "The confiding of certain duties to private individuals no more insulates the State * * * [utilizing private trustees to administer a state activity] than in Kerr v. Enoch Pratt Free Library, supra [149 F.2d 212 (4 Cir. 1945)]."[10],[11]
 
 
 14
 This is an important case and we are entitled to a carefully prepared record after full hearing in the trial court and to the views of the trial court upon such a record. The judgment will be vacated and the case remanded with directions to proceed in accordance with this opinion.
 
 
 15
 GIBBONS, Circuit Judge (concurring).
 
 
 16
 Whether as a grant of a motion under Fed.R.Civ.P. 12(b) or as a grant of summary judgment, the order dismissing the complaint must be reversed insofar as the complaint relies on 42 U.S.C. Sec. 1983. At the least, whether the University of Pittsburgh is engaged in state action is a substantial factual question. Possibly, in view of Pa.Stat.Ann. tit. 24, Secs. 2510-201 to -211 (Supp.1972) there is state action as a matter of law. I would, however, affirm the dismissal of the charge based on 42 U.S.C. Sec. 1981 since I do not believe this statute can be stretched, as the appellant claims, to the point of reaching private sex discrimination.
 
 
 
 [1]
 The defendants assert that the allegations of the complaints are too general and unspecific to maintain a cause of action under the Civil Rights statutes. It is true that the complaints contain vague and general allegations, but that the alleged failure to rehire the plaintiff was because of alleged discrimination is sufficiently clear
 
 
 [2]
 In disregard of the injunctive relief she has requested, the plaintiff has asked for a trial by jury. See amended complaint, p. 1
 
 
 [3]
 Reported at 343 F.Supp. 836
 
 
 [4]
 42 U.S.C. Sec. 1983 (1970) provides:
 "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."
 Federal courts have jurisdiction in section 1983 actions under 28 U.S.C. Sec. 1343 (3) and (4) (1970).
 See United States v. Price, 383 U.S. 787, 794 n. 7, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966).
 U.S.Const. Amend. XIV, Sec. 1, provides in part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."
 
 
 [5]
 The court held that no private right to sue was afforded the plaintiff under Executive Order 11246 as amended by Executive Order 11375, and that there was no pendent jurisdiction to enable Dr. Braden to sustain her action under the Pennsylvania Equal Pay Act, supra, since he had dismissed the counts based on the Federal Acts and the Executive Order. The position of the district judge with regard to the pendent jurisdiction issue is clearly correct if in fact there was no federal jurisdiction. We do not decide this question in light of the disposition of this case
 
 
 [6]
 Prior to the foregoing quotation, the Supreme Court also stated at 725, 81 S.Ct. at 861: "As the Chancellor pointed out, in its lease with Eagle the Authority could have affirmatively required Eagle to discharge the responsibilities under the Fourteenth Amendment imposed upon the private enterprise as a consequence of state participation. But no State may effectively abdicate its responsibilities by either ignoring them or by merely failing to discharge them whatever the motive may be. It is of no consolation to an individual denied the equal protection of the laws that it was done in good faith. Certainly the conclusions drawn in similar cases by the various Courts of Appeals do not depend upon such a distinction. By its inaction, the Authority, and through it the State, has not only made itself a party to the refusal of service, but has elected to place its power, property and prestige behind the admitted discrimination."
 Insofar as State action is concerned, see the excellent article, "Private Universities: The Courts and State Action Theories," 29 Washington & Lee L.Rev., 320 (1972), and "The Supreme Court, Foreword: 'State Action,' " 41 Harv.L. Rev. 84 (Nov. 1967). We adhere to the view that Burton is controlling.
 
 
 [7]
 We will assume that the Chancellor of the University is paid a salary
 
 
 [8]
 This document is not so designated, but since the appellees filed an appendix which is designated as theirs, we take the document to which we have referred to be the appellant's appendix
 
 
 [9]
 A similar provision is in the Temple University-Commonwealth Act, 24 P.S. Sec. 2510-1 et seq., in particular Sec. 2510-2. But it should be observed that the Temple Act also provides, 24 P.S. Sec. 2510-2, the following: "That Temple University owns and maintains land, buildings, and other facilities which are used, together with land and buildings owned by the Commonwealth of Pennsylvania, for higher education, which land, buildings and other facilities are under the entire control and management of the board of trustees." No similar provision appears in the University of Pittsburgh-Commonwealth Act. The Indiana University of Pennsylvania Act, 24 P.S. Sec. 2510-101 et seq., contains no provision similar to the "instrumentality" provision of Sec. 2510-202, University of Pittsburgh, or Sec. 2510-2, Temple University
 
 
 [10]
 If the University is a state agency, the cause of action based on 42 U.S.C. Sec. 1983 cannot be maintained for in United States ex rel. Gittlemacker v. County of Philadelphia, 413 F.2d 84, 86 (1967), we stated: "Because the County of Philadelphia, by virtue of the City-County Consolidation Amendment to the Pennsylvania Constitution, is merged into the city, we have the threshold question to meet: is the city a 'person' under the Civil Rights Act's provisions that 'Every person who * * * subjects * * * any citizen of the United States * * * to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable * * *.' This issue was directly answered by the Supreme Court in Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), which held that a municipality was not such a 'person' contemplated by the Civil Rights Act of 1871 [now 42 U.S.C. Sec. 1983]. Accordingly, there can be no claim upon which relief can be granted under the Civil Rights Act of 1871 against a municipality. Similarly, because Philadelphia General Hospital is a city-owned institution which operates as part of city government (Philadelphia Home Rule Charter, Sec. 3-100(f), Sec. 3-903) it stands on the same footing as the municipal defendant. We conclude it was appropriate to dismiss the action against these two defendants." (Note omitted.)
 The same principle was again enunciated in Lehman v. City of Pittsburgh, 474 F.2d 21 (3 Cir. 1973), as follows: "We affirm that portion of the district court's order dismissing the complaint as to the City of Pittsburgh and the Civil Service Commission of Pittsburgh. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), held that a municipality is not a 'person' for the purpose of Sec. 1983 suits for damages and is not, therefore, subject to suit. This holding has been extended to bar such suits against city agencies. United States ex rel. Gittlemacker v. County of Philadelphia, 413 F.2d 84 (3d Cir. 1969); see Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). It has also been applied by this Court to Sec. 1983 suits for injunctive relief. Educational Equality League v. Tate, 472 F.2d 612, n. 1 (3d Cir. 1973)." See also, Fischer v. Cahill, Governor, 474 F.2d 991 (3 Cir. 1973); Anthony v. Cleveland, 355 F. Supp. 789 (D.Haw.1973), and Wolfe v. O'Neill, 336 F.Supp. 1255 (D.Alaska 1972). This, however, would not necessarily prevent the plaintiff's cause of action from being maintained under the Fourteenth Amendment, Brown v. Board of Education, 347 U.S. 483, 486-496, 74 S.Ct. 686, 98 L.Ed. 873 (1954), and Chancellor Posvar is an appropriate defendant not subject as a party to the limitations of Gittlemacker. The relationship between the University and the Commonwealth is, however, the very point at issue and we feel we should not dispose of it on the present record for the reasons indicated herein.
 
 
 [11]
 We note as a further difficulty disclosed by the record in adjudicating this case that there were several hearings before the district judge but transcripts of those hearings are not part of the record before us