Mel D. ACOSTA, Jr., M. D., Plaintiff,

v.

TYRONE HOSPITAL et al.,
Defendants.

Civ. A. No. 75–313.

United States District Court,
W. D. Pennsylvania.

March 1, 1976.

Harold Gondelman, Pittsburgh, Pa., for plaintiff.

Robert L. Frantz, Buchanan, Ingersoll, Rodewald, Kyle & Buerger, Robert S. Grigsby, Frederick N. Egler, D. H. Trushel, Pittsburgh, Pa., for defendants.

## MEMORANDUM OPINION

ROSENBERG, District Judge.

This matter is presently before me on the motions of each of the defendants, Tyrone Hospital, Dr. John Maras, Dr. Daniel Friday, Dr. R. P. Erdly, Dr. James Shindel, Dr. Howard G. Shaub, Dr. J. A. Ayres, Dr. S. Victor King and Dr. Norman B. Ream, to dismiss the complaint of the plaintiff Mel D. Acosta, Jr., M.D., alleging a deprivation of his civil rights under 42 U.S.C. § 1983. The defendants base their motions on the theory that the actions of the defendants did not constitute "state action" as required by the statute.

Although I am asked to rule on the nine motions of all the defendants which seek the dismissal of the complaint, the defendant, Tyrone Hospital, filed an affidavit in support of its motion which also reflected factual circumstances of the co-defendants and to a great extent supported the motions to dismiss the

complaint. Additionally, the defendants related answers of interrogatories procured by the plaintiff from the defendants as factual circumstances upon which they relied to some extent for the support of their motions.

█ Thus it is that the motions of the defendants for the dismissal of the complaint are not to be considered strictly as a remedy to dismiss the complaint, but should be considered under Rule 56 as being motions for summary judgment. Since the plaintiff filed no counter-affidavit to that of the defendant, Tyrone Hospital and appears to have relied upon the answers given by the defendants as they relate to any question of state action which must necessarily be present to support the civil rights actions, I will consider only the jurisdictional question as it may relate to the civil rights law.

From these factual records now before me it appears that the plaintiff is a licensed medical doctor who became associated with the defendant, Tyrone Hospital, in 1967; that he was a member of the medical staff with clinical privileges including, but not limited to, general surgery; that from 1969 until the association was terminated in 1973 the plaintiff was chief of surgery; that the eight individual defendants are members of the Medical Staff of Tyrone Hospital and occupied positions of responsibility on various hospital committees having authority over the medical staff; that Tyrone Hospital is a private, non-profit hospital located in Tyrone Borough, Blair County, Pennsylvania, incorporated in 1946 and commencing the acceptance of patients in 1954; that the 16.43 acres of land on which the hospital was constructed were donated by the Water ,Department of Tyrone Borough; that construction costs were approximately $1,200,000 of which $407,249.58 were Hill-Burton Act funds[1] received by the hospital from 1953 through 1955; that several modernization projects were undertaken from time to time from 1957 through 1971, all of which were privately funded; that the hospital has received payments for services rendered to patients through the Medicare program since 1966 and the Medicaid program since 1968, all of which are subject to government auditing procedures and exempt from state and most local taxes; that Tyrone Hospital is governed by a Board of Directors who are elected for three-year terms by vote of the individual members of the Hospital corporation; that the Board of Directors has supervisory authority over the organization of the Medical Staff, the appointments and reappointments of the Medical Staff, and the clinical privileges to be accorded to each staff member; and that no state agency is involved in appointments to the Board of Directors or the functioning of the Board.

The plaintiff alleges that the defendant, Tyrone Hospital, through the individual defendants discriminated against him and restrained his medical practice by creating a department of orthopedic surgery under the guise and subterfuge of designating a physician ostensibly accredited by the Board of Orthopedic Surgery as head of that department, and forbid the plaintiff to perform orthopedic surgery any longer while it subsequently cancelled surgical operations scheduled by the plaintiff.

The defendants, in their answers, deny that any discrimination took place but argue that even if there were any such discrimination as charged, it would not be "state action", and therefore the court has no jurisdiction.

The statute under which the plaintiff proceeds is 42 U.S.C. § 1983 which provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof

---

1. Hill-Burton funds are federal funds appropriated under the Hospital Survey and Construction Act, 42 U.S.C. § 291.

to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

To sustain a cause of action the plaintiff must show that the state has so far insinuated itself into a position of interdependence with the hospital that it must be recognized as a joint participant in the challenged activity. *Braden v. University of Pittsburgh,* 477 F.2d 1, C.A. 3, 1973.

The plaintiff contends that this interconnection is demonstrated by the fact that: (1) Tyrone Hospital receives Hill-Burton funds; (2) the land on which the hospital was constructed was donated by Tyrone Borough with a reverter clause to the Borough if the land is no longer used for hospital purposes; (3) the hospital is inspected by the Department of Public Welfare; (4) it participates in Medicare and Medicaid programs and is audited annually; and (5) all members of the hospital staff must be licensed by the State.

The only contentions raised by the plaintiff seeking to create a nexus between the defendants and the jurisdictional issue under the civil rights law which needs any consideration is that (1) the Tyrone Hospital receives Hill-Burton funds, and (2) the land on which the hospital was constructed was donated by Tyrone Borough with a reverter clause to the Borough if the land is no longer used for hospital purposes.

▌ Taking the second first, the contention raises no more of a problem than that which would have existed if the Borough of Tyrone had owned land or buildings for which it had no use and leased it out for commercial purposes on a rental basis. Under Pennsylvania law a Borough has such rights and it is common knowledge that the unnecessary properties or lands which a borough owns, whether through gift, purchase of taxpayers' foreclosures, are frequently leased out for private endeavors. The fact that the privately owned Tyrone Hospital is non-profit and therefore charitable in purpose and as such, tax exempt does not change the leasing elements involved here from those of a commercial endeavor.

However, we look at the functioning of the privately owned, non-profit Tyrone Hospital as it has any dependency and thus a nexus with any particular police or governmental powers other than purely proprietary powers exercised by a state government.

Two leading Supreme Court cases provide the guide by which any analysis of "state action" must begin. In *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961) a restaurant, housed in a parking structure built and maintained by public funds, discriminated against blacks. The court held there was sufficient governmental involvement to render the private activities of the restaurant public. In *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) the plaintiff claimed that termination of electric service to his home by a privately owned utility company constituted state action because of extensive state regulation of the utility company. The court rejected the claim and held that there must be a sufficiently close nexus between the state and the challenged action of a regulated entity so that the action of the latter may fairly be treated as that of the state itself. Is there, then, a sufficiently close nexus between the Commonwealth of Pennsylvania and Tyrone Hospital's termination of the plaintiff's clinical and hospital privileges so that the hospital's actions may be fairly treated as those of the Commonwealth?

The plaintiff relies upon two Fourth Circuit decisions and an Eastern District of Pennsylvania case [2] for the proposition

---

**2.** *Simkins v. Moses H. Cohn Memorial Hospital,* 323 F.2d 959, C.A. 4, 1963, cert. den. 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659 (1964);

*Sams v. Ohio Valley Hospital Association,* 413 F.2d 826, C.A. 4, 1969; *Citta v. Delaware Valley Hospital,* 313 F.Supp. 301 (E.D.Pa.1970).

that receipt of Hill-Burton funds alone is sufficient to find "State action" and urges that the court adopt a "totality of the circumstances" analysis to distinguish the instant case from any countervailing authority. Recent cases in this Circuit, however compel a contrary holding. In *Ozlu v. Lock Haven Hospital,* 369 F.Supp. 285 (M.D.Pa.1973), affirmed without opinion, 511 F.2d 1395 C.A. 3, 1975, the plaintiff physician alleged that his discharge by the defendant without notice or hearing was in violation of 42 U.S.C. § 1983. The Court granted the defendant's motion for summary judgment and held that the receipt of Hill-Burton funds did not amount to state action.

In *Slacoff v. Harrisburg Polyclinic Hospital,* 375 F.Supp. 999 (M.D.Pa.1974), the plaintiff alleged that his privileges were curtailed without due process. As a basis for his state action claim against the defendant, a non-profit hospital, the plaintiff alleged receipt of Hill-Burton funds. The court, citing *Jackson v. Metropolitan Edison Co., supra,* dismissed the complaint holding that the receipt of Hill-Burton funds, Medicare and Medicaid funds and accompanying audits did not constitute the requisite state involvement in the alleged harmful activity.

■ In *Hoberman v. Lock Haven Hospital,* 377 F.Supp. 1178 (M.D.Pa.1974), the plaintiff physician claimed violation of his civil rights by the Medical Executive Committee of a private non-profit hospital for denying him due process at a hearing into alleged unethical practices. The defendant received Hill-Burton funds, Medicare and Medicaid funds, was inspected by the Pennsylvania Department of Public Welfare, was exempt from federal and state taxes, and received funds from the county. The court held that the state was not so intertwined with the harmful activity so as to create state action.

Accordingly, the motions to dismiss will be considered as motions for summary judgment and will be granted.