Vicki MILNER

v.

**NATIONAL SCHOOL OF HEALTH TECHNOLOGY and William Lobel.**

Civ. A. No. 75–2717.

United States District Court,
E. D. Pennsylvania.

March 11, 1976.

Arthur Silverman, Ettinger, Poserina, Silverman & Dubin, Philadelphia, Pa., for defendants.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

Plaintiff has filed this action alleging that she was fired from her job as Director of Personnel and Director of Job Placement at the National School of Health Technology ("National") because she was obtaining a divorce. Plaintiff alleges that National has a policy of firing and refusing to hire divorced women but that divorced men are not similarly discriminated against. Defendants are National and William Lobel, alleged to be the founder, principal, and president of National, a trade school offering courses for medical and dental assistants and technicians.

Plaintiff asserts claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. §§ 1981, 1983 and 1985(3). We have jurisdiction under 28 U.S.C. § 1343 and 42 U.S.C. § 2000e–5(f)(3).

Defendants have moved to dismiss the complaint, alleging the invalidity of all four counts. We shall grant the motion as to the claim based on § 1981 but shall deny it as to all other counts.

## I

Defendants argue that the Title VII[1] claim must be dismissed because of two alleged procedural deficiencies. First, they cite plaintiff's failure to comply with 42 U.S.C. § 2000e–5(c) which mandates that no charge of employment discrimination may be filed with the Equal Employment Opportunity Commission until sixty days after proceedings have been commenced with the comparable state authority.[2] Defendants

Michael K. Simon, David Berger, P. A., Philadelphia, Pa., for plaintiff.

1. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, prohibits discrimination on the basis of sex, race, religion, and national origin in employment.

2. The statute provides:

"In the case of an alleged unlawful employment practice occurring in a State * * * which has a State or local law prohibiting

correctly point out that plaintiff filed her charge with the EEOC on December 10, 1974 without first filing any complaint with the state Human Relations Commission. The amended complaint[3] asserts, however, that on January 8, 1975 the EEOC forwarded plaintiff's complaint to the Philadelphia Commission on Human Relations and that the EEOC did not assume jurisdiction over plaintiff's claim until the 61st day after the referral letter. This procedure fully complies with the requirements of the act by satisfying the congressional purpose of allowing the state agency to consider the complaint before the EEOC does. The Supreme Court in *Love v. Pullman,* 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972), specifically approved this procedure, noting that "nothing in the Act suggests that the state proceedings may not be initiated by the EEOC acting on behalf of the complainant rather than by the complainant himself." Therefore, we reject defendants' argument that the complaint was improperly filed with the EEOC.

Defendants also seek dismissal of the Title VII claim because, they assert, the EEOC issued its "right-to-sue" letter to plaintiff prematurely. Section 706(f) of Title VII, 42 U.S.C. § 2000e–5(f), provides in relevant part:

> "If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d) of this section [requiring sixty days after refer-

the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice * * *, no charge may be filed under subsection (b) of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law * * *."

**3.** At oral argument on the motion to dismiss, we suggested that plaintiff's counsel file an amended complaint alleging of record these facts previously asserted only in briefs.

ral of the charge to the state or local agency], whichever is later, the Commission has not filed a civil action under this section * * * or the Commission has not entered a conciliation agreement to which the person aggrieved is a party, the Commission * * * shall so notify the person aggrieved * * *."

In this case, the Commission notified plaintiff of her right to sue on August 8, 1975. While this date was well past 180 days after plaintiff first filed her claim with the EEOC, it was only 150 days after the Commission assumed jurisdiction. Defendants argue that this section requires a minimum of 180 days for conciliation between the assumption of jurisdiction by the EEOC and the issuance of the right-to-sue letter.

■ We cannot agree with this argument. The statute does not require a minimum of 180 days for conciliation; rather, it requires issuance of a right-to-sue letter *within* 180 days. *Westerlund v. Fireman's Fund Ins. Co.,* 10 EPD ¶ 10,456 (N.D.Cal.1975). The purpose of this subsection is to allow the Commission to attempt conciliation or to file its own civil action before allowing plaintiff to proceed in court. If the Commission determines that conciliation is unlikely, it serves no useful purpose to insist on the running of the full 180-day period before issuance of the right-to-sue letter. *See id.; Weise v. Syracuse University,* 522 F.2d 397 (2d Cir. 1975). The amended complaint in this case alleges that the EEOC had indeed concluded that conciliation was impossible.[4]

**4.** The EEOC's conclusion appears to have been a reasonable one. As noted earlier, plaintiff originally filed her claim with the EEOC on December 10, 1974. While the Commission was clearly entitled to wait a full 180 days after assuming jurisdiction to issue its right-to-sue letter, we feel that it was justified in taking account of the additional three-month period for attempted conciliation in concluding that a settlement was unlikely. In addition, defendants cannot show any prejudice in the issuance of the right-to-sue letter since the complaint was not filed until September 22, 1975, past any arguable 180-day conciliation

Therefore, we shall deny defendants' motion to dismiss Count IV.

## II

■ Defendants have moved to dismiss plaintiff's claim under 42 U.S.C. § 1983,[5] arguing that National has not acted under color of state law. It is clear that National cannot be considered other than a private institution; it is certainly not an agency of the state. This, of course, does not conclude our inquiry since state action may be found if either of two conditions is met: (1) where the state and the private institution have entered into a "symbiotic relationship", *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 175, 92 S.Ct. 1965, 1972, 32 L.Ed.2d 627, 638 (1972), in which the state has "so far insinuated itself into a position of interdependence" with the private party "that it must be recognized as a joint participant in the challenged activity," *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 725, 81 S.Ct. 856, 862, 6 L.Ed.2d 45, 52 (1961); or (2) "where there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself", *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477, 484 (1975). *See also Rackin v. University of Pennsylvania,* 386 F.Supp. 992 (E.D.Pa.1974); *Isaacs v. Board of Trustees of Temple Univ.,* 385 F.Supp. 473 (E.D.Pa.1974).

■ In this case, plaintiff has made no claim that the state has directly involved itself with the alleged discriminatory action. Therefore, state action must be found, if at all, in a symbiotic relationship between the state and National. We have examined the allegations of state-action in the complaint and believe that they do not establish a sufficiently pervasive intrusion of the state into the conduct of National to meet the "symbiotic relationship" test. The fact that National is licensed and regulated by the state as alleged in paragraphs 5(a), (c), (d), (e), (f), and (g) is unpersuasive. *Jackson v. Metropolitan Edison Co., supra; Moose Lodge No. 107 v. Irvis, supra.*

■ Nor does the allegation in paragraph 5(b) that "National performs a public function of training primarily lower income residents of the State of Pennsylvania for employment as medical and dental assistants and technicians" impress us. As Judge Higginbotham recently noted:

"The 'public function' theory has a pleasing simplicity about it, and would permit summary disposition of the issue presently before this Court. It is, however, a slender analytical reed upon which to lean, for it admits of practically no limitation. Every individual or institution performing a function that the state, in its own panoply of activities, performs, would become an agent of the state. * * * Such an expansion of the scope of the Fourteenth Amendment would be clearly unwarranted * * *." *Isaacs, supra,* 385 F.Supp. at 486.

■ Finally, plaintiff alleges in paragraph 5(h) that National would be unable to operate without the state's assistance in providing tuition grants and loans to its students. This allegation is insufficient to establish state action since it is clear that there is no private school today whose students do not receive similar aid. Thus, if we were to conclude that state action could be found as a result of this assistance, all universities would similarly have to be considered as acting under color of state law. Such a

period, and since even today, almost one year since the EEOC assumed jurisdiction, defendants are free to seek conciliation of the charge. *See, Westerlund v. Fireman's Fund Ins. Co., supra.*

5. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects or causes to be subjected, any citizen of the United States * * * to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured * * *."

conclusion would be unacceptable. *Compare Cohen v. Illinois Institute of Technology,* 524 F.2d 818 (7th Cir. 1975) with *Rackin, supra.*

■ We are, therefore, convinced that the allegations of the complaint, even if accepted as true, are insufficient to establish a symbiotic relationship between the state and National. Indeed, the allegations in this case are strikingly similar to those in *Cohen v. Illinois Institute of Technology, supra,* in which Judge (now Justice) Stevens concluded that a § 1983 complaint was properly dismissed for lack of state action. We are reluctant to dismiss the complaint at this juncture, however, because plaintiff alleges in the complaint that discovery will disclose "other facets of the intricate relationship between the Commonwealth of Pennsylvania and National." The Third Circuit has disapproved the dismissal of a § 1983 complaint for lack of state action absent "a carefully prepared record after full hearing in the trial court." *Braden v. University of Pittsburgh,* 477 F.2d 1, 8 (3d Cir. 1973). The *Braden* court emphasized the Supreme Court's admonition in *Burton v. Wilmington Parking Authority, supra,* 365 U.S. at 722, 81 S.Ct. at 860, 6 L.Ed.2d at 50: "Only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance."

Therefore, despite our reservations about the adequacy of the allegations of state action, we shall not dismiss Count II based on § 1983 at this time. Rather, we feel it more reasonable to allow plaintiff a limited amount of time for discovery of other possible bases for state action so that she may amend her complaint accordingly. We will then be in a better position to decide this issue.

## III

Defendants' next attack is mounted against plaintiff's § 1985(3) claim. That section provides in relevant part:

"If two or more persons in any State or Territory conspire * * * for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws * * * [and] if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy * * * the party so injured or deprived may have an action for the recovery of damages * * * against any one or more of the conspirators."

■ Despite defendants' contentions otherwise, we are convinced that the conspiracy alleged in the complaint is covered by this statute. It is clear that there is no requirement under § 1985(3) that the alleged conspiracy arise under color of state law or that any state action be found. *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *Richardson v. Miller,* 446 F.2d 1247 (3d Cir. 1971). However, the conspiracy must be alleged to have deprived plaintiff of a right protected by the federal laws or Constitution. *Cohen v. Illinois Institute of Technology, supra,* 524 F.2d at 828. This prerequisite may be satisfied in either of two ways. First, if the right is one which is protected only against infringement by the state government, e. g., the fourteenth amendment, there must be a sufficient allegation of state action. We have already decided above that we shall postpone our ruling on whether these defendants have acted under color of state law.

■ However, even if there is no state action, § 1985(3) covers federal rights "[which are] entitled to protection against anyone, rather than merely protection from impairment by a state." *Cohen, supra,* at 828. Thus, no state involvement in the conspiracy was necessary in *Griffin v. Breckenridge, supra,* because the charge of racial discrimination brought the case within the thirteenth amendment's prohibition of slavery and because the claim of infringement on the right of interstate travel may be asserted against private individuals as well as the state. *Id.* at 105–06, 91 S.Ct. at 1799–1800, 29 L.Ed.2d 338, 350.

Similarly, in this case, plaintiff asserts that her dismissal violated Title VII of the Civil Rights Act of 1964. That statute prohibits employment discrimination on the basis of sex by private employers. Therefore, plaintiff has sufficiently alleged the deprivation of a federally protected right under § 1985(3).

Defendants argue that plaintiff's conspiracy allegation is deficient because the complaint only specifies one conspirator, defendant Lobel. However, while the statute requires two or more conspirators, it provides that the action may be brought against "any one or more" of them. The complaint alleges that "defendants and other unnamed conspirators" deprived plaintiff of the equal protection of the law. Defendants have cited no authority which suggests that this allegation is insufficient to withstand a motion to dismiss.

We agree with plaintiff that she is entitled to discovery to ascertain the identity of the alleged conspirators. We feel, however, that defendants are entitled to know their identity as well before this case proceeds much further. Therefore, we shall order that plaintiff complete discovery on the conspirators' identity by the time of the hearing which we shall hold on the state action issue discussed in part II above.

### IV

Finally, defendants seek dismissal of the § 1981 claim on the basis that the statute does not cover sex discrimination. Section 1981 provides:

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens * * * ."

It has been established in every jurisdiction which has ruled on this question that § 1981 does not prohibit discrimination on the basis of sex. *See, e.g., Rackin v. University of Pennsylvania,* 386 F.Supp. 992, 1008 (E.D.Pa.1974); *Braden v. University of Pittsburgh,* 343 F.Supp. 836 (W.D.Pa.1972), *rev'd on other grounds,* 477 F.2d 1 (3d Cir. 1973); *League of Academic Women v. Regents of Univ. of Cal.,* 343 F.Supp. 636 (N.D. Cal.1972); *Willingham v. Macon Telegraph Publishing Co.,* 482 F.2d 535, 537 n.1 (5th Cir. 1973).

The cases which plaintiff has cited are inapposite. She relies on *Parmer v. National Cash Register Co.,* 346 F.Supp. 1043 (S.D.Ohio, 1972), but that case merely holds that § 1981 was not preempted by the passage of Title VII. Similarly, in *Reynolds v. Daily Press, Inc.,* 5 EPD ¶ 7991 (E.D.Va.1972), upon which plaintiff also rests, it is unclear whether the claim was based on racial or sex discrimination. That case holds that § 1981 applies to private employment, a conclusion with which we are in complete agreement.

Therefore, plaintiff's claim under § 1981 will be dismissed.

### V

Defendants' motion will be granted as to Count I, based on 42 U.S.C. § 1981. As to Count II, based on 42 U.S.C. § 1983, plaintiff shall have 60 days in which to complete discovery on the issue of state action. As to Count III, plaintiff shall complete discovery and identify the alleged conspirators within 60 days. Defendants' motion will be denied as to Count IV, based on 42 U.S.C. § 2000e *et seq.*