**John FISCHER**

v.

**Father John M. DRISCOLL, President, Villanova University, Dr. Angelo Armenti, Dean, University College, Villanova University, Dr. Robert Lynch, Dean, School of Engineering, Villanova University, Dr. Edward Wallo, Chairman, Department of Civil Engineering, Villanova University.**

Civ. A. No. 82–1698.

United States District Court,
E. D. Pennsylvania.

Sept. 14, 1982.

Marc Lamer, Stassen, Kostos & Mason, Philadelphia, Pa., for plaintiff.

John R. McConnell, Philadelphia, Pa., for defendants.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

In this action, plaintiff John Fischer ("Fischer") has alleged that he was denied his constitutional right to due process under the Fifth and Fourteenth Amendments when defendants, officials of Villanova University, refused to permit him to complete certain classes. Plaintiff bases his claim upon 42 U.S.C. § 1983 and directly upon the Fifth Amendment, contending that the actions by the named defendants constitute "state action" under § 1983 and "federal action" under the Fifth Amendment. Defendants have moved for summary judgment, contending that Villanova University is a private institution and that the conduct of which the plaintiff complains fails to constitute governmental action. For the reasons hereinafter set forth, the Court will grant defendant's motion for summary judgment.

The following facts appear to be uncontested. Plaintiff was admitted to Villanova in 1978 and enrolled in the University's civil engineering program. He was dropped

from the program in June, 1981 for failure to maintain a sufficiently high grade point average. Thereupon, plaintiff's father contacted defendant Dr. Robert Lynch ("Lynch"), Dean of Villanova's School of Engineering, in an attempt to have plaintiff re-admitted to the engineering program. Dr. Lynch told Mr. Fischer that his son could enroll in a physics course through University College, a part-time division of the University.

Plaintiff took the physics course during the Fall 1981 Semester and received a "B". In January, 1982, the plaintiff approached defendant Dr. Edward Wallo ("Wallo"), Chairman of the Department of Civil Engineering at the University, for re-admission into the program but Dr. Wallo would not permit plaintiff's reinstatement in the engineering program. Plaintiff subsequently registered for four engineering courses while remaining enrolled in University College. One of these courses was taught by Dr. Wallo, who upon noting plaintiff's attendance in class, told plaintiff that he could not take the course without Dr. Wallo's permission and that such permission was denied.

When plaintiff resumed attending classes, Dr. Wallo informed him that he was not duly registered. Plaintiff thereupon tendered a check to the University business office and received a registration validation sticker. In March, Dr. Angelo Armenti ("Armenti"), Dean of University College, informed Mr. Fischer that his son's registration was invalidated because plaintiff lacked Dr. Wallo's permission to enroll in engineering courses. Plaintiff sought administrative review of Dr. Armenti's decision, but was informed that an unwritten Villanova policy required Dr. Wallo's permission before plaintiff, as a student enrolled in University College, could take courses in the School of Engineering's Civil Engineering Department.

Plaintiff contends that such an "unwritten rule", applied to him after he had attended many classes, violated his right to procedural due process. He also contends that he was denied due process in that he was not afforded an opportunity for administrative review of Dr. Armenti's and Dr. Wallo's decisions.

Title 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The Fourteenth Amendment of the United States Constitution provides that no state may "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." Thus, before a citizen may obtain relief pursuant to 42 U.S.C. § 1983, the conduct complained of must constitute state action, as defined by case law interpreting the Amendment and the statute. *See Lugar v. Edmonson Oil Co., Inc.,* —— U.S. ——, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *United States v. Price,* 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966).

The Fifth Amendment provides that the federal government may not deprive a person of "life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." Plaintiff has averred that defendants' actions deprived him of his property interest in obtaining engineering training from Villanova and his liberty interests in being free, once admitted into University College, to enroll in a course of his choice absent a written rule prohibiting such enrollment. It is axiomatic that a plaintiff seeking relief pursuant to the Fifth Amendment must complain of federal governmental action.

Plaintiff contends that governmental action exists in this case because Villanova "receives substantial federal and state funds." However, according to the uncontradicted affidavit of Gary B. Fenner, Vice

President for Financial Affairs of Villanova University, no part of the general operating expenses of Villanova University are supported by revenues, grants or subsidies from the federal government. Furthermore, according to the Fenner affidavit, Villanova has received no funds from the Commonwealth of Pennsylvania during 1982 but has received such funds in the past. In no previous year, however, have Commonwealth funds amounted to as much as 1.5 percent of Villanova's annual operating budget, which was $1.5 million in 1982.

The United States Supreme Court's decision in *Rendell-Baker v. Kohn*, —— U.S. ——, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982), held that a privately run school that received at least 90 percent of its operating budget from state funds pursuant to state contracts, was not engaged in state action within the meaning of 42 U.S.C. § 1983.

*Rendell-Baker* involved a suit by six teachers discharged by a private non-profit educational institution under 42 U.S.C. § 1983, alleging violations of their rights guaranteed by the First, Fifth, and Fourteenth Amendments to the Constitution (—— U.S. at ——, 102 S.Ct. at 2768). The school served "problem" high school students, nearly all of whom were referred to the school by local public school committees pursuant to a specific Massachusetts enabling statute. The state and the cities of origin of the school's students paid the tuition and expenses, thereby accounting for the school's receipt of 90 percent of its funding from government sources. In addition, the school was required to comply with many detailed state regulations. The school also had contracts directly with several governmental entities. However, the Supreme Court held that even heavy dependence upon the state for funds did not make the school's hiring and discharge decisions those of the state. The Court held that a state can be held responsible for the actions of private institutions "only where it has exercised coercive power or has provided such significant encouragement . . . ." (—— U.S. at ——, 102 S.Ct. at 2770). The Court found that receipt of state funding, even proportionately large amounts of state funding, by an institution did not in itself constitute such coercion or "significant encouragement." *See also Blum v. Yaretsky*, —— U.S. ——, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) (private nursing home's extensive regulation by state and receipt of state funds did not make nursing home treatment of patients "state action"); *Brownley v. Gettysburg College*, 338 F.Supp. 725 (M.D. Pa. 1972) (college's receipt of state funds amounting to three percent of school's budget does not make school's action state action). *See also Murphy v. Villanova University*, Civil Action No. 80–4581 (September 2, 1982) (administration of work-study program funded by federal government is not state action by Villanova).

■ The mere fact that Villanova is chartered by the Commonwealth of Pennsylvania does not make Villanova a state actor. In chartering the colleges within its borders, Pennsylvania is simply exercising its police power to regulate such institutions. Such regulation does not make the conduct of the regulated party state action within the meaning of 42 U.S.C. § 1983. In *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972), the Supreme Court held that a group's possession of a state liquor license did not make their conduct state action, even though the possession of the relatively scarce licenses conferred privilege and economic benefits upon the Lodge. If the use of a state-conferred liquor license does not establish state action, chartering by the state cannot establish state action. *See also Cohen v. Illinois Institute of Technology*, 524 F.2d 818 (7th Cir. 1975); *Powe v. Miles*, 407 F.2d 73 (2d Cir. 1968) (incorporation or chartering of educational institution by the state does not make the institution's activities state action).

Similarly, Villanova cannot be performing a public function merely because it is engaged in the business of education, since education is not the type of activity that is exclusively reserved to the state. *See Krohn v. Harvard Law School*, 552 F.2d 21

865

(1st Cir. 1977); *Cohen v. Illinois Institute of Technology,* 524 F.2d 818 (7th Cir. 1975). Exemption from state and federal taxes has also been found not to constitute sufficient ground for a finding of state action. *See Berrios v. Inter American University,* 535 F.2d 1330, 1332 (1st Cir. 1976); *Pendrell v. Chatham College,* 370 F.Supp. 494 (W.D. Pa. 1974).

Cases in the Third Circuit and in this district which have found state action on the part of "state-related" universities are readily distinguishable from the instant case. In *Braden v. University of Pittsburgh,* 477 F.2d 1 (3d Cir. 1973), the Court found plaintiff's 42 U.S.C. § 1983 claims could not be dismissed without a factual hearing because of the state's involvement with the university in selecting members of the university's board of trustees and the university's receipt of state funds (between 9 and 35 percent during the relevant years). However, the Third Circuit did not state that such ties between the Commonwealth and the University amounted to state action, but only that a factual hearing was necessary to resolve the matter. The differing nature of the contacts at issue in this case precludes the plaintiff from establishing the existence of state action on the part of Villanova. Also, the recent Supreme Court decision of *Rendell-Baker v. Kohn, supra* has eliminated government funding such as that found in *Braden* as a basis for finding state action.

On remand, the District Court for the Western District of Pennsylvania found that the appointment of the university's Board of Trustees by both the state and the university constituted joint action which made Pittsburgh a state actor within the state action models articulated by *Jackson v. Metropolitan Edison Co., infra* and *Burton v. Wilmington Parking Authority, infra.* The Court further found other evidence of integration between the University of Pittsburgh and the Commonwealth's system of higher education. (*See* 392 F.Supp. 118 at 124–125). No such interaction is averred in plaintiff's pleading in this case. For that reason, *Isaacs v. Board of Trustees of Temple University of the Commonwealth System of Higher Education,* 385 F.Supp. 473 (E.D. Pa. 1974) is inapposite to this case, because *Isaacs* concerned Temple University, a case in which the record showed contacts and interrelation with the state far different and greater than those of Villanova.

In *Rackin v. University of Pennsylvania,* 386 F.Supp. 992 (E.D. Pa. 1974), the Court held that the cumulative effect of Penn's many interrelationships with the state was sufficient to make the university's action state action. However, those contacts were both more numerous and individually more substantial than those raised by the plaintiff in this case. The University of Pennsylvania, for example, received greater amounts of public funding and was intimately assisted by the state and by the Housing and Redevelopment Authority of Philadelphia in creating and maintaining its campus. The Governor of the state is the titular head of the Board of Trustees. The contacts averred by the plaintiff in this case simply do not, individually or collectively, rise to the same level of state involvement as was found in *Rackin.*

Villanova's contacts with the state are much more like those found in *Sament v. Hahnemann Medical College & Hospital,* 413 F.Supp. 434 (E.D. Pa. 1976). In *Sament,* the Court followed the cumulative weighing approach of *Rackin,* granted summary judgment to the defendants, and held that Hahnemann Medical College's actions were not state action within the meaning of 42 U.S.C. § 1983. Said the Court:

Even in combination, the contacts between the state and Hahnemann are insufficient to constitute the kind of symbiotic relationship with which the *Burton* and *Braden* courts were concerned.

413 F.Supp. at 441. Here, as in *Sament,* the state has not significantly involved itself with the allegedly unconstitutional conduct (*Moose Lodge No. 107 v. Irvis,* 407 U.S. 163. 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972)).

The Supreme Court has long held that, for state action to exist, the state must have "so far insinuated itself into a position

of interdependence with [the private institution or its actors] that it must be recognized as a joint participant in the challenged activity" (*Burton v. Wilminton Parking Authority,* 365 U.S. 715, 725, 81 S.Ct. 856, 861, 6 L.Ed.2d 45 (1961)), or there must exist a "sufficiently close nexus between the State and the challenged action . . . so that the action may be fairly treated as that of the State itself." *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974), or the institution must perform a "public function" like those traditionally performed by the state itself (*Burton v. Wilmington Parking Authority, supra* at 365 U.S. at 722, 81 S.Ct. at 860). Thus, a reading of the applicable cases shows that state action may be found to exist where (1) a private entity possesses a "symbiotic relationship" with the state or is a "joint participant" in the challenged conduct; (2) there exists a "close nexus" between the state and the challenged conduct; or (3) the private actor is performing a "public function." The actions at issue in this case fit none of the three models of state action set forth by the Supreme Court.

Plaintiff's complaint avers that Villanova's receipt of state funds makes the University's conduct state action. As heretofore noted, *Rendell-Baker v. Kohn* and other cases clearly establish that the small amount of state funds received by Villanova do not make the University's conduct state action.

■ Alternatively, the plaintiff argues in his memorandum in opposition to summary judgment that the totality of contacts between Villanova and the federal government makes Villanova's conduct federal action. As heretofore noted, plaintiff bases his claim not only upon 42 U.S.C. § 1983, but also directly upon the Fifth Amendment. According to plaintiff, these federal contracts are: University administration of federal student aid programs; the presence of a Naval Reserve Officer Training Corps (ROTC) units on campus; availability of veterans' benefits to veterans attending Villanova; availability of an internship with the U.S. Department of Agriculture for Villanova Agriculture majors. Plaintiff further contends that there exists a need to weigh these contacts to determine whether they constitute federal action and that such a weighing requires fact-finding by the Court, making the issue of governmental action inappropriate for summary judgment. However, the Court finds that the contacts between Villanova and the federal government are not of the nature and quality that would satisfy the federal governmental action requirement of the Fifth Amendment. Thus, regardless of the specifics of Villanova's student aid program or the operation of ROTC on campus, the plaintiff has failed to articulate a plausible theory of federal action in this case.

■ As heretofore noted, the Due Process Clause of the Fifth Amendment provides that "No person shall . . . be deprived of life, liberty, or property, without due process of law." The clause applies to federal government action, not private action, *See Public Utilities Commission v. Pollak,* 343 U.S. 451, 72 S.Ct. 813, 96 L.Ed. 1068 (1952) similar to the manner in which 42 U.S.C. § 1983 applies to state government action. The standard for finding federal government action under the Fifth Amendment is the same as that for finding state action under 42 U.S.C. § 1983 and the Fourteenth Amendment. *See Warren v. Government National Mortgage Association,* 611 F.2d 1229, 1232 (8th Cir. 1980); *Geneva Towers Tenants Organization v. Federated Mortgage Investors,* 504 F.2d 483, 487 (9th Cir. 1974) ("standards utilized to find federal action for purposes of the Fifth Amendment are identical to those employed to detect state action subject to the strictures of the Fourteenth Amendment"); *Wenzer v. Consolidated Rail Corp.,* 464 F.Supp. 643, 647 (E.D. Pa. 1979). *See also Lugar v. Edmonson Oil Co.,* —— U.S. ——, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *United States v. Price,* 383 U.S. 787, 794, 86 S.Ct. 1152, 1156, 16 L.Ed.2d 267 (1966) ("under color of state law" requirement of 42 U.S.C. § 1983 is to be treated as equivalent to "state action" requirement of the Fourteenth Amendment).

Thus, federal action may be found to exist where (1) a private entity possesses a "symbiotic relationship" with the federal government or is a "joint participant" in the challenged conduct; (2) there exists a "close nexus" between the federal government and the challenged conduct; or (3) the private actor is performing a "public function." *See Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).

The administration of a student financial aid program in which some students receive monetary assistance from the federal government exists at nearly every university in the nation. State and federal student aid is so pervasive that for all intents and purposes a college cannot avoid enrolling students who will receive such government-sponsored assistance. Often, as an administrative convenience for its students, Villanova and other universities will administer the program so that the University dispenses the governmental funds to the students out of the same office that awards the students university-sponsored and other private awards. Such an arrangement, which attempts to make life easier for the student and to provide the university with full knowledge of the student's financial picture, can hardly be characterized as a joint venture on the part of federal government and the university. Nor is such an arrangement a public function. This type of student aid administration simply does not provide the close nexus necessary to constitute federal action.

If a university were considered a governmental actor merely because its students received state or federal student aid or because veterans attended the school, a university, no matter how private in all other respects, would become a governmental actor unless it took affirmative steps to refuse to enroll students receiving such aid. Such action by the university might well subject it to legal actions by students denied admission on the basis of their receipt of government scholarship funds.

Courts facing the issue have concluded that governmental financial assistance in the form of student aid is not sufficient to make the educational institution a governmental actor. *See Berrios v. Inter American University,* 535 F.2d 1330 (1st Cir. 1976); *Cohen v. Illinois Institute of Technology,* 524 F.2d 818 (7th Cir. 1975); *Pendrell v. Chatham College,* 370 F.Supp. 494 (W.D. Pa. 1974); *Murphy v. Villanova University, supra.*

The presence of Naval ROTC on the Villanova campus provides some nexus between Villanova and the federal government and makes the relationship between the two apparently symbiotic in that the government's military training program is presumably more popular with students due to its proximity to their classes and in that the Villanova students enrolled in ROTC are eligible for further government aid. However, the benefits received are not sufficiently symbiotic to make Villanova a federal actor. Clearly, if the ROTC center were located off-campus, no federal action could exist. In such a case, the ROTC students receiving government stipends would stand in the same position as any Villanova student receiving a federally insured student loan. The mere fact that the Naval ROTC building stands on campus cannot logically make all actions of Villanova University (and its agents carrying out school policy) the legal equivalent of federal government action.

For the reasons heretofore set forth, the Court will grant defendants' motion for summary judgment and enter judgment in favor of defendants and against plaintiff. An appropriate order will be accordingly entered.

### ORDER

AND NOW, this 14th day of September, 1982, upon consideration of defendants' motion for summary judgment and plaintiff's response thereto, oral argument having been held before this Court on July 20, 1982, for the reasons set forth in this Court's Memorandum of September 14th, 1982,

IT IS HEREBY ORDERED: Defendants' motion for summary judgment is GRANTED and judgment is ENTERED in favor of Father John M. Driscoll, Dr. Angelo Armenti, Dr. Robert Lynch, and Dr. Edward Wallo, and against plaintiff, John Fischer.