Clare C. HODGE, M.D.

v.

PAOLI MEMORIAL HOSPITAL et al. (two cases)

Nos. 76–2715, 76–3064.

United States District Court,
E. D. Pennsylvania.

June 24, 1977.

Charles W. Bowser, James J. Binns, Philadelphia, Pa., for plaintiff.

F. Hastings Griffin, Jr., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

The issue presented in these cases is whether the receipt of federal funds under the Hill-Burton Act, 42 U.S.C. § 291 et seq.,[1] by defendant Paoli Memorial Hospital ("Hospital"), converts the actions of its board of directors and staff in their non-retention of staff doctors into actions taken "under color of" state law, within the meaning of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

Plaintiff, a general surgeon, was on the medical staff of the Hospital until August 25, 1976, when he was advised by telephone that he would not be reappointed. On August 26, 1976, plaintiff received a written confirmation of the August 25 action in a letter from the executive director of the Hospital. That letter also notified plaintiff that, effective October 1, 1976, his lease in the Paoli Memorial Medical Office Building would be terminated and that he would be expected to vacate the premises. That

---

1. The Hill-Burton Act is a federal-state program which provides federal funds for the construction and modernization of hospitals and other medical facilities. *See generally Nat'l Ass'n of Neighborhood Health Centers, Inc. v.* *Mathews,* 551 F.2d 321, 324–325 (D.C. Cir. 1976); *Simkins v. Moses H. Cone Memorial Hosp.,* 323 F.2d 959, 962–965 (4th Cir. 1963), *cert. denied,* 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659 (1964).

same day, plaintiff brought a civil rights action (C.A. 76–2715) ("first action") under 42 U.S.C. § 1983 [2] alleging that the non-re-appointment action taken by the Hospital, its board of directors and certain of its medical staff members violated his rights guaranteed by the Due Process Clause of the Fourteenth Amendment, and request-ing temporary, preliminary and permanent injunctive relief, as well as money damages. The Honorable Donald W. Van Artsdalen, Emergency Judge, granted plaintiff's re-quest for a temporary restraining order. On September 2, 1976, this Court held a hearing on plaintiff's request for a prelimi-nary injunction, which request we denied the following day.[3] On September 30, 1976, plaintiff filed another civil rights action (C.A. 76–3064) ("second action") under 42 U.S.C. § 1983 [4] alleging that the August 26 prospective termination of his lease violated his rights guaranteed by the Due Process Clause of the Fourteenth Amendment. Again, he requested temporary, preliminary and permanent injunctive relief, as well as money damages. The trial on the request for a permanent injunction in the first ac-tion was held on October 13, 1976, at which time we also heard and denied plaintiff's requests for temporary and preliminary in-junctive relief in the second action. We then consolidated the two actions for pur-poses of permanent injunctive relief.

2. Jurisdiction was based upon 28 U.S.C. § 1343(3).

3. Essentially, we denied plaintiff's request on the ground that he failed to establish that he was likely to prevail after a trial on the merits. (*See* N.T. 2–3 to 2–6.)

4. *See* note 2 *supra*.

5. Since, for the reasons stated *infra*, we do not find that plaintiff established that defendants, in terminating his staff privileges and lease, acted "under color of" state law, we need not decide the question of whether defendants' ac-tions violated any of plaintiff's rights guaran-teed by the Fourteenth Amendment.

6. 42 U.S.C. § 1983 provides as follows:
   Every person who, under color of any stat-ute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction

Counsel for the parties then agreed that the testimony taken at the September 2 prelim-inary injunction hearing, coupled with the record made at the Hospital's administra-tive hearing, constituted a sufficient record upon which this Court could render a final decision.[5]

■ In order to maintain an action under 42 U.S.C. § 1983 [6] against a nominally "pri-vate" party, the plaintiff is required to es-tablish that the defendant's allegedly un-constitutional conduct constituted action "under color of" state law.[7] This state ac-tion requirement may be satisfied if either of two conditions is met.[8] First, state ac-tion may be found where "there is a suffi-ciently close nexus between the State and the challenged action of the regulated enti-ty so that the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974). Second, state action is present where the state and the defendant have entered into a symbiotic relationship, in which the state has "so far insinuated itself into a position of interdependence with [the defendant] that it must be recognized as a joint participant in the challenged activity . . . ." *Burton v. Wilmington Parking*

thereof to the deprivation of any rights, privi-leges, or immunities secured by the Constitu-tion and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

7. The requirement of section 1983 that the challenged actions be "under color of" state law has been treated as equivalent to the "state action" requirement of the Fourteenth Amend-ment. *United States v. Price*, 383 U.S. 787, 794 n. 7, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966); *Magill v. Avonworth Baseball Conference*, 516 F.2d 1328, 1331 n. 5 (3d Cir. 1975).

8. There are, of course, "other analytical frame-works to deal with state action problem of a different complexion." *Braden v. University of Pittsburgh*, 552 F.2d 948, 958 n. 46 (3d Cir. 1977) (en banc); *see Parks v. "Mr. Ford,"* 556 F.2d 132, 148–164 (3d Cir. 1977) (en banc) (Gibbons, J., concurring).

*Authority,* 365 U.S. 715, 725, 81 S.Ct. 856, 862, 6 L.Ed.2d 45 (1961).[9]

Plaintiff contends that defendants acted "under color of" state law due to the fact that the Hospital received approximately 1.1 million dollars under the Hill-Burton Act when the Hospital was originally constructed.[10] He relies upon a series of Fourth Circuit cases, *Simkins v. Moses H. Cone Memorial Hospital,* 323 F.2d 959 (4th Cir. 1963), *cert. denied,* 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659 (1964); *Sams v. Ohio Valley General Hospital Association,* 413 F.2d 826 (4th Cir. 1969); *Christhilf v. Annapolis Emergency Hospital Association, Inc.,* 496 F.2d 174 (4th Cir. 1974); *Duffield v. Charleston Area Medical Center, Inc.,* 503 F.2d 512 (4th Cir. 1974); *Doe v. Charleston Area Medical Center, Inc.,* 529 F.2d 638 (4th Cir. 1975), and an Eastern District of Pennsylvania case, *Citta v. Delaware Valley Hospital,* 313 F.Supp. 301 (E.D.Pa.1970), in support of his contention. Essentially, those cases hold that the mere receipt of Hill-Burton funds carries with it the obligation to observe federal constitutional mandates such as the Due Process Clause of the Fourteenth Amendment. We decline to follow those cases for several reasons.

9. We note that the Third Circuit has recently held that "*Burton* and *Jackson* stand as two models of state-action analysis that have been designed by the Supreme Court to date with the applicability of either approach resting on the type of setting which may be present." *Braden v. University of Pittsburgh,* 552 F.2d 948, 958 (3d Cir. 1977) (en banc) (footnote omitted).

10. Although the Hospital admitted in its answers that when it constructed its present facility it received approximately $1.1 million under the Hill-Burton Act, plaintiff failed to introduce into evidence exactly what percentage of the total construction costs the $1.1 million represents. Therefore, on Friday, June 17, 1977, the Court held a hearing, at which time the record was opened for the limited purpose of allowing the parties to provide the Court with the missing information. That information was supplied through the testimony of R. J. Rosecky, the Assistant Executive Director of Finance of the Hospital. He testified that the Hospital received approximately $1.1 million under the Hill-Burton Act and that those funds were last received in November, 1972. He further testified that the Hospital's costs for land, construction of the buildings and property contained within the buildings as of August 31, 1976,

First, all that plaintiff has shown is that the Hospital received Hill-Burton funds. No doubt, in connection with the acceptance of benefits under the Hill-Burton Act, the Hospital "agreed to abide by a variety of regulatory terms related both to its operations and to the use of the . . . funds." *Doe v. Bellin Memorial Hospital,* 479 F.2d 756, 761 (7th Cir. 1973) (Stevens, J.). However, this general governmental involvement is far different from the almost complete physical and financial interdependence that existed between the private restaurant owner and the state in *Burton.* See, e. g., *Hollenbaugh v. Carnegie Free Library,* 545 F.2d 382 (3d Cir. 1976). Second, since we do not believe that the receipt of Hill-Burton funds created a "symbiotic relationship" between the Hospital and the Commonwealth, it was necessary for plaintiff to establish that the Commonwealth participated in the challenged activity. See *Jackson, supra.* Plaintiff offered no evidence, however, that the Commonwealth in any way fostered or encouraged *via* statute, regulation or otherwise, the termination by defendants of his staff

totalled approximately $11.2 million. The testimony was based upon the Hospital's financial records kept in the ordinary course of business. Accordingly, the Hill-Burton funds represented approximately 9.8% of the total costs of the Hospital's land and buildings as they existed on August 31, 1976.

The Court also notes that plaintiff contends that defendants acted "under color of" state law since, in addition to the receipt of Hill-Burton funds, the Hospital receives "public support in the form of tax exemptions and public subsidies." Brief for Plaintiff at 10. However, plaintiff offered no evidence to support the assertion that the Hospital receives public subsidies. With respect to the tax exemptions, the Hospital did admit in its answers that "as a non-profit corporation [it] qualifies for certain tax exemptions." Plaintiff failed to show, however, exactly what kind of tax exemptions the Hospital receives. Nevertheless, we do not deem the omission to be critical since, even if we assume that the Hospital receives certain exemptions from federal and state taxes, it would not change this Court's conclusion that defendants did not act "under color of" state law.

privileges and lease. Finally, the above-cited cases represent a distinct minority view. We choose not to follow that view but rather to follow the view held by the overwhelming majority of courts, that the mere receipt of Hill-Burton funds by a hospital does not convert all of its actions into actions taken "under color of" state law. *See Greco v. Orange Memorial Hosptial Corp.,* 513 F.2d 873 (5th Cir. 1975), *cert. denied,* 423 U.S. 1000, 96 S.Ct. 433 (1976); *Jackson v. Norton-Children's Hospitals, Inc.,* 487 F.2d 502 (6th Cir. 1973), *cert. denied,* 416 U.S. 1000, 94 S.Ct. 2413, 40 L.Ed.2d 776 (1974); *Doe v. Bellin Memorial Hospital,* 479 F.2d 756 (7th Cir. 1973); *Briscoe v. Bock,* 540 F.2d 392 (8th Cir. 1976); *Ascherman v. Presbyterian Hospital of Pacific Medical Center, Inc.,* 507 F.2d 1103 (9th Cir. 1974); *Ward v. St. Anthony Hospital,* 476 F.2d 671 (10th Cir. 1973); *Holton v. Crozer-Chester Medical Center,* 419 F.Supp. 334 (E.D.Pa.1976); *Acosta v. Tyrone Hospital,* 410 F.Supp. 1275 (W.D.Pa.1976); *Slavcoff v. Harrisburg Polyclinic Hospital,* 375 F.Supp. 999 (M.D.Pa.1974); *Ozlu v. Lock Haven Hospital,* 369 F.Supp. 285 (M.D.Pa. 1974), *aff'd mem.,* 511 F.2d 1395 (3d Cir. 1975). Accordingly, the complaints will be dismissed for failure to state a claim upon which relief can be granted.

An appropriate Order will be entered.