419 A.2d 1191

**Ralph J. MILLER, M. D., Appellant,**

v.

**INDIANA HOSPITAL, a Pennsylvania Corporation.**

Superior Court of Pennsylvania.

Argued April 10, 1979.

Filed April 3, 1980.

Reargument Denied Aug. 12, 1980.

Petition for Allowance of Appeal Denied Oct. 1, 1980.

372

John A. DeMay, Pittsburgh, for appellant.

Stewart M. Flam, Pittsburgh, for appellee.

Before CERCONE, President Judge and WIEAND and HOFFMAN, JJ.*

HOFFMAN, Judge:

Appellant's contentions may be summarized as follows: (1) appellee hospital breached its contract with appellant by failing to comply with those provisions of its bylaws governing the revocation of active staff privileges; (2) the findings of appellee's hearing committee were based upon hearsay evidence and were, therefore, not properly supported; (3) the annual reappointment of appellant to the hospital staff constituted a waiver of objections to prior misconduct; (4) appellee violated appellant's procedural due process rights under the Federal Constitution; and (5) appellee violated appellant's substantive due process rights under the Federal Constitution. We find appellant's contentions to be without

* Judge DONALD E. WIEAND is sitting by special designation.

merit and, accordingly, affirm the decree of the court below denying injunctive relief.

On February 16, 1977, Joseph White, a patient who had been under the care of appellant, Dr. Ralph Miller, died at the Indiana Hospital, appellee in this case. The following day, Dr. M. C. Williams sent a report to Dr. Richard Freda, the president of the medical staff, in which he stated that the quality of care which appellant had rendered to Mr. White was "below that which should be acceptable in any hospital." On February 22, 1977, Dr. Freda sent a letter to appellant inviting him to attend a meeting of the Executive Committee pursuant to the Indiana Hospital Staff Bylaws[1] regarding the charges which had been made against him. On February 24, 1977, Dr. Williams sent another letter to the Executive Committee formally requesting that action be taken to suspend appellant's staff privileges. This letter cited additional instances of inadequate care provided by appellant. On February 26, 1977, the Executive Committee held an informal meeting which appellant attended. Appellant refused to discuss the charges against him and left the meeting abruptly. On March 18, 1977, the Executive Committee sent written notice to appellant of its determination to recommend to the Board of Directors of the hospital that his active staff privileges be revoked. Appellant demanded a hearing and indicated his intention to exercise his rights to defend himself in accordance with the bylaws. Consequently, the Committee informed appellant of the hearing date and provided him with a list of charges against him and a list of proposed witnesses. The list of charges went beyond those included in the original complaint letter and request

1. The relevant portion of the Bylaws provides:
   Within 10 days following the receipt of a request for action the Executive Committee shall take action upon the request. The affected individual shall be permitted to make an appearance before the Executive Committee prior to its taking action on such a request. This appearance shall not constitute a hearing, shall be preliminary in nature, and none of the procedural rules provided in these bylaws with respect to hearings shall apply. A record of such appearance shall be made by the Executive Committee.
   Indiana Hospital Staff Bylaws Article IV, part C, § 2(a).

for revocation. In the interim, appellant requested that the Executive Committee appoint an impartial ad hoc committee to conduct the hearing because he viewed the Executive Committee as hostile and biased against him. The Committee denied the request and held a hearing beginning on June 15, 1977, and continuing for several days thereafter.[2] The hearing committee consisted of three members of the medical staff and one member of the dental staff. Both parties were represented by counsel. The hearing officer presiding over the proceedings was counsel to the hospital. The hearing committee recommended the revocation of appellant's staff privileges. The Executive Committee adopted the recommendation and appellant took an appeal to the hospital Board of Directors. After an adversary hearing, a committee of four directors affirmed the determination of the Executive Committee and the full board adopted their recommendation. On October 14, 1977, appellant obtained a preliminary injunction ex parte from the Court of Common Pleas of Indiana County, preventing revocation of his staff privileges. The court dissolved the preliminary injunction on February 9, 1978, and denied a permanent injunction on June 29, 1978. From that denial, appellant appeals to this Court.

■ The staff bylaws of a hospital constitute the terms of a legally binding contract between the hospital and the doctors on its staff. *Berberian v. Lancaster Osteopathic Hospital Association*, 395 Pa. 257, 149 A.2d 456 (1959). The hospital will, moreover, be held to a standard of strict compliance with its bylaws. *Id.* Thus, in *Berberian*, where appellant was removed from the hospital staff without notice or a hearing, contrary to the provisions in the bylaws, our Supreme Court enjoined the hospital from removing appellant until those requirements were met.

■ In the instant case, appellant contends that the hospital breached its contract with him by improperly commencing the proceedings against him, by providing him with

2. The extensive notes of testimony of that hearing cover 1493 pages.

an inaccurate witness list, and by filing an unduly vague list of charges against him. Appellant alleges that because Dr. Freda initiated proceedings against him upon receipt of a complaint letter rather than upon a formal request for revocation, the Executive Committee lacked "jurisdiction" to hear his case. The bylaws confer no right upon appellant to obtain disclosure of the request for revocation of his privileges. This alleged error in commencement of the proceedings against Dr. Miller was cured by Dr. Williams' subsequent formal request for revocation referring to his earlier letter and resulted in no prejudice to appellant. Appellant also contends that the hospital breached those provisions of the staff bylaws requiring that he be provided with a list of witnesses and of the charges against him. However, the witness list was not so inaccurate as to preclude appellant from preparing properly for the proceedings against him. Finally, the list of charges was not only sufficiently precise, but contained summaries of the evidence to be adduced in support of each of the charges. Such de minimis deviations from the provisions of the hospital bylaws are not the sort of impermissible breach contemplated by the Court in *Berberian* when it established the requirement of strict compliance with staff bylaws.

▌ Appellant next contends that the findings against him were based solely upon hearsay evidence and were consequently not properly supported. "It is well established that hearsay evidence supportive of other evidence may be admitted in proceedings before *administrative agencies.*" *Board of Public Education of the School District of Pittsburgh v. Pyle*, 37 Pa.Cmwlth. 386, 392, 390 A.2d 904, 907 (1978) (emphasis added). Accordingly, in an even less formal hearing before a hospital committee, rules of evidence need not be so stringently applied as in a trial. The Indiana Hospital Staff Bylaws provide that "any relevant evidence shall be admitted . . . if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the admissibility of such evidence in a court of law." Indiana Hospital Staff

Bylaws, Article VII, Part C § 7. As the lower court noted, the evidence upon which the hearing committees relied included oral admissions by appellant, letters written by appellant, and hospital records, all of which would be admissible in court. The hearsay evidence which was allowed at the hearing was offered merely in support of other admissible evidence. Appellant's contention is, consequently, without merit.

■ Appellant next contends, without citation to authority, that the hospital has waived any objections to appellant's prior misconduct by annually reappointing him to the medical staff. "A waiver in law is the act of *intentionally* relinquishing or abandoning some known right, claim or privilege." *Brown v. Pittsburgh*, 409 Pa. 357, 360, 186 A.2d 399, 401 (1962) (emphasis in original). Further, "the doctrine of implied waiver in Pennsylvania applies only to situations involving circumstances equivalent to an estoppel, and the person claiming the waiver to prevail must show *that he was misled and prejudiced thereby.*" *Id.*, 409 Pa. at 361, 186 A.2d at 401 (emphasis in original).

Merely reappointing appellant annually to the staff did not indicate an intention on the part of the hospital to ignore the cumulative effect of appellant's prior misconduct. Appellant has neither alleged nor proven any reliance upon the assumption that the actions of the hospital constituted a waiver. It was therefore proper for the hospital committees to consider prior misconduct which may not have been so egregious in any one year as to warrant denial of reappointment, but the cumulative effect of which called for appellant's dismissal from the staff.

Finally, appellant contends that he was denied his right to due process of law under the Fourteenth Amendment to the Federal Constitution. The Fourteenth Amendment "applies only to 'state action' and not to private conduct." *Adler v. Montefiore Hospital Association of Western Pennsylvania*, 453 Pa. 60, 68–69, 311 A.2d 634, 639 (1973). The actions of public hospitals clearly constitute state action for purposes of Fourteenth Amendment due process. *Id.*, 453 Pa. at 70,

311 A.2d at 640. In addition, private hospitals with certain public characteristics, so—called "quasi–public" hospitals, are deemed to be engaged in state action. *Id.* Appellant asserts that the due process standard must be applied in evaluating the propriety of his dismissal because the Indiana Hospital is a quasi–public hospital.

Our Supreme Court has stated in dicta that there are two categories of quasi–public hospitals: (1) those which receive tax benefits, are funded mainly from public sources, and hold a monopoly in the area they serve, and (2) those which receive construction funds from the federal government under the Hill–Burton Act.[3] *Id.,* 453 Pa. at 70–71, 311 A.2d at 639–640. The Court relied upon a series of cases from the Fourth Circuit Court of Appeals and one case from the Eastern District of Pennsylvania in formulating the second test of state action. *Id.,* 453 Pa. at 71, 311 A.2d at 640 (citing *Sams v. Ohio Valley General Hospital Assoc.,* 413 F.2d 826 (4th Cir. 1969); *Eaton v. Grubbs,* 329 F.2d 710 (4th Cir. 1964); *Simkins v. Moses H. Cone Memorial Hospital,* 323 F.2d 959 (4th Cir. 1963); *Citta v. Delaware Valley Hospital,* 313 F.Supp. 301 (E.D.Pa.1970)). Subsequently, however, in declining to apply the second test, the Third Circuit Court of Appeals has noted that "[t]he majority of circuits have held the receipt of Hill–Burton funds, Medicare and Medicaid payments and the usual hospital licensing provisions do not constitute state action." *Hodge v. Paoli Memorial Hospital,* 576 F.2d 563 (3d Cir. 1978) *affirming* 433 F.Supp. 281 (E.D. Pa.1977) (citations omitted). *See also Holton v. Crozer–Chester Medical Center,* 419 F.Supp. 334 (E.D.Pa.1976), vacated because of after–discovered evidence, 560 F.2d 575 (3d Cir. 1977); *Acosta v. Tyrone Hospital,* 410 F.Supp. 1275 (W.D.Pa.1976); *Hoberman v. Lock Haven Hospital,* 377 F.Supp. 1178 (M.D.Pa.1974); *Slavcoff v. Harrisburgh Polyclinic Hospital,* 375 F.Supp. 999 (M.D.Pa.1974); *Ozlu v. Lock Haven Hospital,* 369 F.Supp. 285 (M.D.Pa.1974). We therefore conclude that if presented with the issue today, our

**3.** Hospital Survey & Construction Act, 42 U.S.C.A. § 291 *et seq.* (Supp.1970).

Supreme Court would not apply the second test of state action articulated in *Adler*. The federal courts look to the specific facts and circumstances of each case in order to determine whether the state is so involved in the affairs of the hospital as to render the action of the hospital that of the state. *See, e. g., Hoberman v. Lock Haven Hospital, supra* at 1188; *Ozlu v. Lock Haven Hospital, supra*, at 287. Similarly, we will employ the first, more fact–sensitive standard articulated by the Court in *Adler* in making our determination.

■ Appellant alleges that the hospital receives funds under the Hill–Burton Act, as well as from other public sources, and that "there is no denial that Indiana Hospital is the sole hospital in Indiana County and, therefore, holds a monopoly in the area." Appellant's Brief at 14. These bare allegations are insufficient to prove the requisite inextricable relationship between the hospital and the state. Appellant has not made an affirmative showing of the extent of the funds actually received by the hospital from the state and federal governments nor has he adduced sufficient evidence to prove that the hospital holds monopoly status in the region. Accordingly, appellant has not sustained his burden of showing that Indiana Hospital is a quasi–public agency. We cannot conclude on such a record that the action of the hospital in revoking appellant's staff privileges constituted state action so as to call into play the protections of the Federal Constitution. Consequently, we decline to judge appellant's claims of unfairness against the due process clause; rather we will assess these claims according to the standards set forth in the contract between the parties, *i. e.*, the hospital bylaws.

■ Appellant raises several contentions regarding the fairness of the revocation proceedings: (1) that one of the hearing officers was prejudiced against him; (2) that the Executive Committee did not sufficiently investigate the charges against him; (3) that the Executive Committee

failed to produce essential witnesses; and (4) that the charges were unduly vague and indefinite. The staff by-laws confer no right on appellant to remove hearing officers because of possible ill–will towards him. We therefore find no merit in appellant's first contention. The bylaws do provide that the Executive Committee shall investigate any request for revocation of privileges. Indiana Hospital Staff Bylaws, Article IV, Part B § 2. Because the charges against appellant were supported by sufficient evidence, however, the claim that the hospital committee failed adequately to investigate the charges is frivolous. Similarly, the failure of the hospital to call certain witnesses was not an unfair procedure, but merely a fact to be considered in determining whether the hospital had sustained its burden of proof. We have previously addressed appellant's contention that the list of charges was vague and reiterate here that the list was sufficiently specific to meet the goal of permitting appellant to prepare his defense in an informed manner.

Contrary to appellant's contentions, the hospital procedure afforded him comprehensive safeguards including: written notice, an opportunity to prepare and to be heard, a right to counsel, a right to present witnesses and to cross–examine, stenographic transcription of the proceedings, and an appeal of right to the Board of Directors. We therefore conclude that appellant was dismissed in a fair and impartial manner in accordance with the hospital bylaws and is not entitled to injunctive relief.[4]

Decree affirmed.

4. Appellant also contends that the findings of the hearing committee with respect to the death of Joseph White were against the weight of the evidence. While professing to recognize that "the outcome of any case cannot depend upon the mere numbers of witnesses called by one side or the other," Appellant's Brief at 42, appellant bases his argument upon the fact that few expert witnesses testified against him while many experts testified for him. The weight to be accorded the testimony of the experts was an issue for the finder of fact. We will not reverse that finding upon the mere allegation that more witnesses testified for appellant than against him.