## Das v. Greene County Memorial Hospital

*W. Theodore Brooks,* for plaintiff.
*Jonathan Alder,* for defendants.

GRIMES, *P.J.,* June 12, 1987—Plaintiff, Arunava Das, M.D., has filed a complaint in equity against defendant, Greene County Memorial Hospital, and against the individual members of the Board of Trustees of Greene County Memorial Hospital.

On October 10, 1986 a female employee of the Greene County Memorial Hospital filed a signed affidavit with the administration of the hospital alleging plaintiff, a physician with privileges at the hospital, had engaged her in acts of sexual harassment. Plaintiff has admitted that he engaged in a voluntary, romantic and sexual liaison with the female employee and further admitted such activity occurred on hospital premises while the employee was on duty. Plaintiff has at all times denied any use of force. The female employee alleged that plaintiff's attentions were unwelcome and that the incident at

issue which occurred on October 8, 1986 was forced upon her by plaintiff.

On October 11, 1986, plaintiff requested a voluntary leave of absence from the hospital for an indefinite duration. Plaintiff remained on leave until January 3, 1987 at which time he withdrew his voluntary leave.

Throughout December 1986 the appropriate committee was in the process of considering reappointment of physicians at the hospital as required under the medical staff bylaws. This reappointment process is set forth in Article V, section 3 of the bylaws, which states:

"(a) At least 60 days prior to the final scheduled governing body meeting in the medical staff year, the Credentials Committee shall review all pertinent information available on each practitioner scheduled for periodic appraisal, for the purpose of determining its recommendations for reappointments to the medical staff and for the granting of clinical privileges for the ensuing period, and shall transmit its recommendations, in writing, to the Executive Committee. Where nonreappointment or a change in clinical privileges is recommended, the reason for such recommendation shall be stated and documented.

"(b) Each recommendation concerning the reappointment of a medical staff member and the clinical privileges to be granted upon reappointment shall be based upon such member's professional competence and clinical judgment in the treatment of patients, his ethics and conduct, his attendance at medical staff meetings and participation in staff affairs, his compliance with the hospital bylaws and the medical staff bylaws, rules and regulations, his cooperation with hospital personnel, his use of the hospital's facilities for his patients, his relations with

the other practitioners and his general attitude toward patients, the hospital and the public.

"(c) At least 30 days prior to the final scheduled governing body meeting in the medical staff year, the Executive Committee shall make written recommendations to the governing body, through the chief executive officer, concerning the reappointment, nonreappointment and/or clinical privileges of each practitioner then scheduled for periodic appraisals. Where nonreappointment or a change in clinical privileges is recommended, the reasons for such recommendation shall be stated and documented.

"(d) Thereafter, the procedure provided in section 2 of the Article V relating to recommendations on applications for initial appointment shall be followed."

In compliance with the medical staff bylaws, questions were raised concerning the plaintiff's ethics and conduct as a result of the allegations made by the female employee against plaintiff. As a result, a special ad hoc hearing committee of the Board of Trustees was established in accordance with further procedures set forth in the medical staff bylaws, to conduct a hearing concerning the validity of these allegations. At that hearing, both plaintiff and the hospital were represented by counsel and both had the opportunity to introduce any and all relevant testimony with respect to the issue of plaintiff's reappointment in view of the allegations made against plaintiff. The report of the ad hoc hearing committee, dated March 23, 1987 recommended that plaintiff not be reappointed. The recommendation of the ad hoc hearing committee was later affirmed and readopted by the Board of Trustees and plaintiff's hospital privileges were withdrawn April 28, 1987.

Subsequently, plaintiff filed this action seeking a preliminary injunction against the hospital and its Board of Trustees alleging that he was denied "fundamental due process" under the Fourteenth Amendment of the United States Constitution, and that the Board of Trustees did not comply with the medical staff bylaws in its process for denial of reappointment of plaintiff. Further, the plaintiff alleges that a breach of contract occurred between the plaintiff and the hospital. A full and complete hearing was held on June 5 and 8, 1987 and the court now considers the merit of the allegations raised by plaintiff in view of the equitable relief sought.

## DISCUSSION

The Pennsylvania Supreme Court has stated that a court may grant a preliminary injunction only in cases where three elements have been established, to wit: "[w]here there is urgent necessity to avoid injury which cannot be compensated for by damages, . . . where rights of the plaintiff are clear, and . . . (where) greater injury will be done by refusing it than in granting it." *Independent State Store Union v. Pennsylvania Liquor Control Board,* 495 Pa. 145, 150, 432 A.2d 1375, 1381 (1981). The federal courts have expanded these elements to require a court to take into account, when relevant, "(1) the possibility of harm to other interested parties from the grant or denial of the injunction, and (2) the public interest. Essentially, the court must balance the existing interests." *American College of Obstetricians and Gynecologists, Pennsylvania Section et al. v. Richard Thornburgh et al.,* 613 F.S. 656, 664 (D.C. Pa. 1985). These criteria shall be examined in view of the facts of the present case to deter-

mine whether or not a preliminary injunction should be issued.

Under the elements required by the Pennsylvania Supreme Court, this court will first focus on whether the rights of the plaintiff are clear. Plaintiff alleges in this action, among other things, that he has been denied fundamental due process as guaranteed in the Fourteenth Amendment of the U.S. Constitution. He argues that such a denial resulted from procedural deficiencies occurring throughout the process used by the defendants to arrive at a decision not to reappoint him to the hospital staff. It is well established that "the Fourteenth Amendment of the Constitution of the United States applies only to 'state action' and not to private conduct." *Adler v. Montefiore Hospital Association of Western Pennsylvania,* 455 Pa. 60, 311 A.2d 634 (1974). In order for plaintiff to be protected by the due process clause of the constitution, there must be significant "state action" involved before the Fourteenth Amendment would force application of due process requirements to the reappointment procedures conducted by the hospital. To establish the presence of state action as required for due process protection, plaintiff must prove that the hospital is a quasi-public institution whose actions constitute state action. It has been recognized by Pennsylvania courts that "private hospital with certain public characteristics, so-called 'quasi-public' hospitals, are deemed to be engaged in state action . . ." *Miller v. Indiana Hospital,* 277 Pa. Super. 370, 378, 419 A.2d 1191, 1194 (1980).

As set forth by the Pennsylvania courts, "[T]he test for assessing whether a hospital is to be considered a quasi-public institution is whether that hospital receives tax benefits, is funded mainly from public sources, and holds a monopoly in the area

which it serves." *Id.* at 379, 419 A.2d at 1194. *Rosenberg v. Holy Redeemer Hospital,* 351 Pa. Super. 399, 506 A.2d 408 (1986). It is necessary that all three of the elements be present before a court may draw the conclusion that a hospital is a quasi-public institution.

Plaintiff attempts to establish the quasi-public status of the hospital by presenting evidence in support of each of the requisite elements described above. In order to establish the first element of the three part test, plaintiff alleges that the hospital enjoys exemption from local real estate taxes and federal state and local income taxes. Mr. George Muir, assistant administrator of fiscal services for the hospital, has testified both at a pre-trial deposition as well as at the hearing that the hospital has been granted section 503-C3 income tax exempt status from the Internal Revenue Service and that the hospital's main building and property are totally exempt from taxation. These facts conclusively establish the first prong of the test to satisfy quasi-public status.

Part two of the test requires plaintiff to prove that the hospital is funded mainly from public sources. In an effort to establish this fact, the plaintiff relies on the testimony of Mr. Muir wherein he states that between 60 and 65 percent of the hospital's total operating revenue was derived from Medicare and Medicaid payments for in-patient and out-patient services, and further, the hospital has received Medicaid funding of $25,000 for certain home care services in 1986. However, by this evidence the plaintiff has not established that the hospital is funded mainly from public sources. Payments to the hosptial under the Medicare and Medicaid programs in reality flow to the individual patients who are covered by the programs and receive services

from the hospital. As a result, the payments made to the hospital by Medicare and Medicaid do not carry with them the obligation to conform to constitutional standards. *Ozlu v. Lock Haven Hospital,* 369 F. Supp. 285 (M. D. Pa. 1974).

Since plaintiff has not proven that the hospital is funded by public monies other than Medicare and Medicaid, he is unsuccessful in establishing the hospital as a quasi-public institution. Further, it has been held that funds administered under the Hill-Burton Act are not to be considered as public funds for the purpose of establishing a quasi-public institution. *Rosenberg v. Holy Redeemer Hospital, supra.* Although the court in *Rosenberg* was deciding the appropriateness of a summary judgment, the issue necessitated the consideration of the Hill-Burton Act and funds received thereunder for the same reason this court must consider those funds.

Assuming arguendo that plaintiff had shown that the hospital is funded mainly from public sources, plaintiff is unable to establish that the hospital is a monopoly as is required under the third prong of the test. Testimony at trial established that the hospital treats approximately 67 percent of the population in their primary market area. This in turn reflects that 27 percent of the population in the primary market area is going to medical facilities other than Greene County Memorial Hospital for treatment. This evidence does not support the proposition that the hospital is clearly a monopoly.

By failing to establish that the hospital is a quasi-public institution, plaintiff does not have a clear right to due process considerations under the Fourteenth Amendment of the U.S. Constitution.

Secondly, plaintiff alleges that he has a right to relief based on a breach of contract. Plaintiff argues

that by accepting appointment to the medical staff of the hospital, he agreed to be bound by the medical staff bylaws and subject to the procedures for reappointment set forth therein. Plaintiff further alleges that the defendant failed to follow the procedures for reappointment as set forth in the bylaws and therefore, defendant willfully breached the contract between it and plaintiff. As stated above, the Pennsylvania Supreme Court has held that an injunction will not issue when the injury can be compensated for by damages. *Independent State Store Union v. Pennsylvania Liquor Control Board, supra.*

The allegation of breach of contract would appear to be better heard by an action at law, but because this claim is collateral to the foregoing equitable considerations, the court will retain jurisdiction on this issue as a part of plaintiff's complaint in equity. No evidence to date has been presented to show that the hospital breached that contract nor that damages were suffered as a result of the alleged breach. From the evidence presented to date, it appears that those procedural mistakes complained of by plaintiff may have been to his benefit. Had the provisions for reappointment been strictly followed, plaintiff may have had his privileges revoked prior to April 28, 1987. At any rate, the evidence to date is not sufficient to establish that plaintiff has a clear right under his breach of contract allegation.

## CONCLUSION

Plaintiff has not established the requisite elements necessary to compel the issuance of a preliminary injunction. Fundamentally, the rights of plaintiff are not sufficiently clear. Moreover, there is no urgent necessity to avoid an injury which could

not be compensated for by damages, and further, it has not been demonstrated that there would be greater injury by refusing the injunction than in granting it, and finally, a consideration for the possibility of harm to other interested parties does not necessitate the issuance of a preliminary injunction.

## ORDER

And now, this June 12, 1987, for the reasons set forth in the foregoing opinion, plaintiff's motion for a preliminary injunction is hereby dismissed, and further, this court of equity shall retain jurisdiction of plaintiff's cause of action for breach of contract.