**Ralph J. MILLER, M.D., Appellant,**

v.

**INDIANA HOSPITAL, a corporation; Henry F. Hild; Donald F. Smith; William R. McMillen; John S. Simpson; Thomas S. Barbor; Samuel W. Jack, Jr.; Mrs. C. Fred Hildebrand; Mrs. Wanda M. Weyandt; Harry C. McCreary; C. Wilmer Johnston; George M. Evans; Donald S. Brody; Roger J. Reschini; Joseph Kovalchick; William G. Evans, M.D.; Melvin C. Williams, M.D.; Robert G. Goldstrohm, M.D.; David C. Hughes, M.D.; Ralph F. Waldo, M.D.; Herbert L. Hanna, M.D.; Richard N. Freda, M.D.; Frank Weiner, M.D.; Henry Mitchell, M.D.; Ralph R. Brown, M.D.**

No. 87–3403.

United States Court of Appeals, Third Circuit.

Argued Nov. 6, 1987.

Decided March 31, 1988.

Rehearing and Rehearing En banc Denied April 22, 1988.

**140**

Judd F. Crosby (argued), Evans, Ivory, Moses, Hollander & MacVay, P.C., Pittsburgh, Pa., for appellant.

Larry A. Silverman (argued), Dickie, McCamey & Chilcote, P.C., Pittsburgh, Pa., for appellees.

Before SLOVITER and BECKER, Circuit Judges, and COWEN, District Judge [*].

* Honorable Robert E. Cowen, United States District Judge for the District of New Jersey, sitting by designation. Since the argument of this appeal, Judge Cowen has become a member of this Court.

**OPINION OF THE COURT**

SLOVITER, Circuit Judge.

In this antitrust case filed by a physician against a hospital and members of its administrative and medical staff the district court entered summary judgment for the defendants based on its conclusion that the hospital's decision to terminate the physician's staff privileges was supported by "substantial evidence" of the physician's unprofessional conduct. 660 F.Supp. 250. On appeal, we must decide whether the court erred as a matter of law in using a "substantial evidence" standard for entry of summary judgment.

**I.**

Plaintiff Ralph J. Miller is a licensed physician and surgeon specializing in urology. He was a teaching fellow at the University of Pittsburgh for several years and has published numerous articles in the area of his medical specialty. He established a practice in Indiana, Pennsylvania in 1959 after obtaining staff privileges in the Department of Surgery at Indiana Hospital.[1] Indiana Hospital is the only general hospital in the County of Indiana, a county with a population of approximately 93,000 persons and an area of 825 square miles.

Several years after moving to Indiana, Miller purchased land and built a five-office medical building two miles from the hospital. In 1975 Miller erected another building on the land, in which he envisioned housing a comprehensive family-oriented medical center, which was to include a group practice, with pediatricians, family practitioners, and medical and surgical specialists. The center also included on-site laboratory and radiology services which, Miller has averred, it could and did provide "at lower cost than the same services at the hospital." App. at 151.

According to the affidavits of Miller and others, the administrators of Indiana Hos-

---

1. The grant of hospital staff privileges, also known as admitting privileges, is required before a physician may admit or treat patients at that hospital. *See generally* Dolan & Ralston, *Hospital Admitting Privileges and the Sherman Act*, 18 Houston L.Rev. 707 (1981).

pital perceived Miller and his expansion plans as a threat to the hospital. For example, William Peters, Administrator of the hospital in the 1960's, averred that in the mid–1960's Henry Hild, Chairman of the Board of the hospital, told Peters that he disliked Miller and was concerned about Miller's plans to expand his health care holdings. Robert Knight, Comptroller of the hospital in the early 1970's, averred that people within the hospital administration were fearful that Miller and his expansion plans posed a threat to the hospital and that they wanted to "gather sufficient medical staff support to keep Dr. Miller from hiring good doctors to staff his medical center." App. at 140–41. Don Gaydos, Director of Fiscal Services at the hospital in the early to mid 1970's, averred that Donald Smith, President of the hospital, told Gaydos "to befriend Dr. Miller so that I [Gaydos] could gather information on what and how Dr. Miller was planning as to expansion of his medical office building and his health care center so that I could report these things back to Mr. Smith." App. at 138.

In 1977, a patient under Miller's care at the hospital died. After a member of the medical staff's executive committee wrote several letters to the staff's president regarding the allegedly inadequate care Miller had provided to the deceased patient and others, the hospital's executive committee held an informal meeting, which Miller attended. The executive committee thereafter sent Miller written notice of its decision to recommend to the hospital's board of directors that Miller's staff privileges be revoked.

Following Miller's demand for a hearing, the executive committee notified Miller in writing of the hearing date, the charges against him, and the names of the witnesses who were to appear. The hearing committee was comprised of three members of the hospital's medical staff and one member of the dental staff; the hospital's legal counsel presided. Miller was represented by counsel, and was able to present and cross-examine witnesses. The hearing lasted for three days, produced over twenty-two hundred pages of transcript testimony and exhibits, and resulted in a recommendation that Miller's staff privileges be revoked.

Specifically, the hearing committee found that Miller had exhibited "disruptive, insulting, intimidating, disrespectful, disparaging, abusive and other improper behavior" toward various members of the staff, App. at 287–90; that he had acted improperly in the case of the deceased patient by failing to request a medical consultation, by failing to order certain tests, and by making improper entries in the patient's record; that he had failed to comply with an order of the Bureau of Medical Assistance barring him from writing Medical Assistance prescriptions; that he had acted unprofessionally by discussing confidential medical information with a layperson; and that he had failed to carry out certain administrative duties.

The executive committee of the medical staff adopted the hearing committee's recommendation, as did the hospital's Board of Directors. In accordance with the hospital's bylaws, Miller's staff privileges were then revoked.[2]

Miller filed an action against the hospital in the Court of Common Pleas of Indiana County, alleging, *inter alia,* breach of contract, defects in the hearing proceedings, and Fourteenth Amendment due process violations. The court granted his *ex parte* motion for a preliminary injunction, but subsequently dissolved the injunction and denied his request for a permanent injunction. The Superior Court of Pennsylvania affirmed the trial court's denial of injunctive relief, finding that "the charges against [Miller] were supported by sufficient evidence" and that Miller "was dis-

---

**2.** Commentators have explained that the absence of staff privileges is devastating to a physician, especially to a specialist such as a surgeon, who depends to such a large degree on the technology and equipment found only in a hospital setting, and puts the physician at "a competitive disadvantage, if for no other reason than it connotes a second-class practitioner." Dolan & Ralston, *supra,* 18 Houston L.Rev. at 713–14; *see also Weiss v. York Hospital,* 745 F.2d 786, 794 (3d Cir.1984), *cert. denied,* 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985).

missed in a fair and impartial manner in accordance with the hospital bylaws." *Miller v. Indiana Hospital*, 277 Pa.Super. 370, 380, 419 A.2d 1191, 1196 (1980). The Supreme Court of Pennsylvania denied Miller's petition for allowance of appeal. *See* App. at 24.

In 1977 and 1978, Miller applied for and was denied staff privileges. In 1979 the hospital refused even to consider his application for staff privileges for 1980, and for the next three years it refused even to furnish him with an application.

In 1981 Miller filed the present action in federal district court in which he named as defendants the hospital and approximately twenty-five individual hospital administrators and medical staff members (collectively referred to as "the hospital"). The complaint alleged a conspiracy to deprive Miller of his civil rights and violations of both federal and state antitrust laws and various other state law claims. Miller sought an injunction requiring the hospital to accept and process his application for staff privileges, as well as compensatory and punitive damages.[3]

The district court dismissed all of Miller's claims except for the antitrust claims, *Miller v. Indiana Hospital*, 562 F.Supp. 1259 (W.D.Pa.1983), and Miller does not appeal from that ruling. After further discovery, the respective parties moved for summary judgment on the remaining antitrust claims.

The district court, relying on another decision from the same district, ruled that in order for a plaintiff physician to withstand summary judgment in an antitrust action arising out of a hospital's decision to terminate the physician's staff privileges, "the plaintiff must demonstrate on the basis of the record before the hospital at the time

of its decision, that the hospital lacked substantial evidence in support of its ultimate decision." *Miller v. Indiana Hospital*, No. 81–1091, slip op. at 11–12 (W.D.Pa. February 10, 1986) (quoting *Pontius v. Children's Hospital*, 552 F.Supp. 1352, 1372 (W.D.Pa.1982)). The court further stated that "whether there is substantial evidence to support the decision of the hospital committee to discharge a physician or to deny staff privileges to that physician is a question of law for a reviewing court and the resolution of that question need not await trial." *Miller v. Indiana Hospital*, No. 81–1091, slip op. at 11.

After reviewing the transcript of the proceedings before the hospital's hearing committee, the court found the requisite "substantial evidence." It therefore granted the hospital's motion for summary judgment, denied Miller's motion for summary judgment, and dismissed the pendent state law claims. *Miller v. Indiana Hospital*, 660 F.Supp. 250 (W.D.Pa.1987). Miller appeals.

## II.

We have plenary review of the district court's application of legal precepts, in this case its use of a substantial evidence test to grant summary judgment. *Universal Minerals, Inc. v. C.A. Hughes & Company*, 669 F.2d 98, 101–02 (3d Cir.1981). The hospital argues that because this court stated in *Weiss v. York Hospital*, 745 F.2d 786, 820 (3d Cir.1984), *cert. denied*, 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985), that a medical staff "is ... entitled to exclude individual doctors ... on the basis of their lack of professional competence or unprofessional conduct," the threshold inquiry in an antitrust staff privi-

---

**3.** There is some ambiguity in the record as to whether this action is directed to the hospital's initial termination of Miller's privileges or its subsequent refusal to consider his application for reinstatement. The complaint suggests the latter; amendments thereto include the former. Ruling on the defendants' motion to dismiss, the district court determined that the substance of Miller's complaint was limited to the hospital's refusal to accept or process his applications for staff privileges; however, in ruling on the sum-

mary judgment motion at issue in the present appeal, the court focused on the revocation as well. At oral argument before this court, counsel for Miller stated that both the initial revocation and the subsequent refusal to reinstate were at issue. We do not attempt to resolve this discrepancy because it would not affect the outcome of this appeal. For the sake of simplicity, we will refer to the "termination" of Miller's staff privileges as encompassing the initial revocation and subsequent refusals to reinstate.

lege case is the professional competency of the individual physician. The hospital misreads *Weiss*. Nothing in that case suggests that the usual antitrust inquiry may be avoided merely because the conspiracy alleged involves a hospital.

In *Weiss*, the jury had found in favor of the plaintiff class of osteopaths on its claim that in refusing to grant staff privileges the members of the defendant hospital's medical staff had conspired in violation of section 1 of the Sherman Act. *Id.* at 799–801. On appeal, this court applied traditional antitrust analysis to the defendants' exclusionary conduct. *Id.* at 812–30. In contrast, the substantial evidence test used by the district court here and in *Pontius* is derived from administrative law and reflects the deference that a judicial body owes to the administrators entrusted with regulatory authority. *See Universal Camera Corp. v. National Labor Relations Board,* 340 U.S. 474, 477–88, 71 S.Ct. 456, 459–65, 95 L.Ed. 456 (1951). That test has no place in an antitrust case where Congress has given the jury the responsibility of resolving disputed fact issues. *See* 15 U.S.C. § 15.[4]

In this case, Miller contends that his hospital staff privileges were revoked and his applications for reinstatement denied because defendants wished to stifle his competition. He contends that the outcome of the hearing pursuant to which his privileges were revoked was predetermined and that he was treated more severely than other physicians whose competence was in question but who presented no economic threat to the defendants. Defendants' argument that they revoked Miller's staff privileges because of his professional incompetence and unprofessional conduct is a defense they may present before the jury which, if convinced, will absolve them of any antitrust liability. It is inappropriate and unprecedented, however, to pretermit the jury's consideration of the parties' various contentions under the rubric of the substantial evidence test. Such a test defers to the manner in which defendants themselves, who are parties in interest, weighed the evidence and drew inferences. Moreover, the substantial evidence test effectively eliminates any application of the antitrust laws to defendants' actions. It is apparent therefore that the district court erred as a matter of law in applying a substantial evidence test to determine if there were genuine issues of material fact to withstand summary judgment.

### III.

Because our review of an order granting summary judgment is plenary, *see Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977), we consider the hospital's summary judgment motion under the proper legal standard. Summary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). While the moving party has the burden initially of identifying that evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must make a sufficient showing to establish the existence of every element necessary to its case and on which it bears the burden of proof. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp.,* 812 F.2d 141, 144 (3d Cir.1987). Credibility determinations are not the function of the judge; rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 106 S.Ct. at 2513.

The summary judgment standard is no different in antitrust litigation than in any other. *See Matsushita Electric In-*

---

**4.** The Health Care Quality Improvement Act of 1986, 42 U.S.C. §§ 11101 *et seq.,* applicable to professional review actions commenced on or after November 14, 1986, provides a degree of immunity to hospital peer review decisions. Because this legislation is not applicable to this litigation, we do not decide if the hospital's actions were immunized thereunder.

dustrial Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); see also Tunis Brothers Co., Inc. v. Ford Motor Co., 823 F.2d 49 (3d Cir.1987), cert. denied, — U.S. —, 108 S.Ct. 1013, 98 L.Ed.2d 979 (1988). A claim under section 1 of the Sherman Act, 15 U.S.C. § 1 (1982), requires proof of a contract, combination or conspiracy, a restraint of trade, and an effect on interstate commerce. See Weiss, 745 F.2d at 812. We do not understand the hospital at this stage of the proceeding to be challenging either the elements of conspiracy or the interstate commerce effect of its actions;[5] the central issue for summary judgment was the reasonableness of the restraint.

Miller concedes for the purpose of this appeal that a rule of reason analysis is applicable to the hospital's conduct.[6] The hospital argues that its conduct was patently reasonable because Miller, after a full hearing approved by the state court, was found to have demonstrated professional incompetence and unprofessional conduct. However, Miller has produced evidence which, if believed by the jury, would show that, in fact, the hospital's revocation of his privileges, although ostensibly for profes-

sional incompetence and unprofessional conduct, was motivated by the anticompetitive purpose of destroying Miller's competition or prospective competition.

The affidavits of former hospital administrators, referred to in Part I above, provide evidence that even before the death of Miller's patient, the hospital expressed concern about Miller's competition. Miller's affidavit sets forth evidence of at least one example of the hospital's interference with his recruitment of medical staff for his proposed medical center by encouraging a pediatrician to break his contract with Miller; of its failure to terminate the staff privileges of other physicians whose professional infractions were allegedly more substantial than Miller's;[7] and of irregularities and possible conflicts of interests in the hearing process itself, such as the fact that the presiding officer of the hearing was counsel for the hospital and that the chairman was a physician against whom Miller had previously filed charges of unethical conduct with the state board of licensure.

The evidence produced by Miller is sufficient to raise a genuine issue of material

---

**5.** Under this court's precedent, the joint action taken by the medical staff satisfies the conspiracy requirement. Weiss, 745 F.2d at 814. Similarly, a hospital's treatment of out-of-state patients, purchase of medical supplies from out of state, and receipt of money from out of state, including federal funds, satisfies the requirement of affecting interstate commerce. See Weiss, 745 F.2d at 824–25; see also Cardio–Medical Associates, Ltd. v. Crozier–Chester Medical Center, 721 F.2d 68 (3d Cir.1983).

**6.** In Weiss v. York Hospital, 745 F.2d 786 (1984), cert. denied, 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985), we applied a per se analysis to the antitrust claim of the class of osteopathic physicians based on the denial of staff privileges at a hospital. We reasoned that the hospital's actions were the functional equivalent of a group boycott, which is illegal per se under section 1 of the Sherman Act, 15 U.S.C. § 1 (1982). See United States v. General Motors Corp., 384 U.S. 127, 145–46, 86 S.Ct. 1321, 1330–31, 16 L.Ed.2d 415 (1966). We recognized that in a hospital staff privilege case in which the hospital defends on lack of professional ability, the rule of reason test would apply. Weiss, 745 F.2d at 820–22.

The Supreme Court recently rejected application of a per se analysis in a case involving the

expulsion of a member from a wholesale buying cooperative. See Northwest Wholesale Stationers, Inc. v. Pacific Stationery & Printing Co., 472 U.S. 284, 105 S.Ct. 2613, 86 L.Ed.2d 202 (1985). Because Miller accepts the rule of reason test for purposes of this appeal, we need not decide in this case the effect of Northwest Wholesale on our holding in Weiss.

**7.** Miller points, for example, to evidence that even though the hospital had strong reasons to believe that one of its physicians who was being treated for clinical depression was addicted to drugs and that that doctor had failed to make rounds, failed to attend staff meetings, delayed treating patients and scheduling patient operations, and overprescribed narcotics, the hospital merely placed that doctor on probation. In Weiss, we noted the relevance for antitrust purposes of a hospital's failure to apply the same standards to all physicians seeking staff privileges. We explained that "we do not doubt that a hospital could exclude an applicant from staff privileges either because he is not medically qualified or because of unprofessional conduct, so long as the hospital applies the same standards to all applicants." 745 F.2d at 821 n. 60 (emphasis added).

fact as to whether the hospital's conduct in revoking Miller's staff privileges was, as the hospital claims, because of his incompetence and hence a reasonable restraint or whether it was a result of anticompetitive motivation and thereby constituted a prohibited restraint of trade. That issue is for the fact finder which, if it decides that the restraint of trade was unreasonable, will also fix the amount of any damages. *See Weiss*, 745 F.2d at 817. At that stage, it would be the responsibility of the court to determine whether, on the basis of the evidence relating to Miller's professional competence, it should direct the reinstatement of his staff privileges.[8]

## IV.

For the foregoing reasons, we will reverse the district court's order granting the hospital's motion for summary judgment, and remand for further proceedings consistent with this opinion.[9]

---

8. Because the parties have focused only on Miller's claim under Section 1 of the Sherman Act, we do not reach Miller's claim that the hospital also violated section 2 of the Sherman Act. A ruling on this claim would require the district court to rule on the relevant product and geographic markets and determine whether the hospital occupies a position of monopoly within them. *See Weiss*, 745 F.2d at 825. We assume that on remand there will be further development of the record. *See Potters Medical Center v. City Hosp. Ass'n*, 800 F.2d 568, 574 (6th Cir. 1986).

9. The hospital contends, as an additional matter, that it is entitled to summary judgment because it is immune from antitrust review under the state action doctrine of *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). The district court did not reach this issue, and,

given the factual intricacies involved, for example, whether the Pennsylvania statutes and regulations regarding physician peer review constitute the requisite state action, we believe that it would be more appropriate for the district court to address it in the first instance.

We note that the Supreme Court has granted certiorari in one case in which a court of appeals held that a private hospital's revocation of a doctor's staff privileges was immune from federal antitrust liability under the *Parker* doctrine. *Patrick v. Burget*, 800 F.2d 1498 (9th Cir.1986), *cert. granted*, —— U.S. ——, 108 S.Ct. 65, 98 L.Ed.2d 29 (1987). *Patrick* was argued on February 22, 1988; the district court may be well-advised to await the Court's decision should the immunity issue become relevant in this case.